### WILKS *v*. MUTUAL AID UNION.

### Opinion delivered July 1, 1918.

1.  EVIDENCE—DEATH, WHEN PRESUMED.—Kirby's Digest, section 3081, which provides that a person absenting himself beyond the limits of the State for five years successively shall be presumed to be dead, unless proof is made that he is alive within that time, applies only to residents of the State at the time of their disappearance beyond the limits of the State.

2.  EVIDENCE—DEATH—PROOF OF, BY ABSENCE.—In an action to recover under a life policy on the ground that the insured is presumed to be dead under Kirby's Digest, section 3081, it is for the jury to determine first whether deceased was a resident of the State, and, if so, second, had he been absent from the State for five successive years without being heard from?

Appeal from Benton Circuit Court; *Jas. S. Maples,* Judge; affirmed.

*W. S. Floyd* and *Vol T. Lindsey,* for appellant.

The residence of deceased was proven to have been at Garfield, Arkansas. His absence from this State for five years, and that no one had seen or heard from him. The presumption is that he was dead. Kirby's Digest, § 3081; 54 Ark. 70; 46 Ill. 230; 92 Am. Dec. 248. The verdict is contrary to the law and the evidence.

The appellee *pro se.*

Wilks was not a resident of Arkansas. The presumption of death by five years absence was not proven. The jury were properly instructed and the evidence sustains the verdict. 14 A. & E. Ann. Cases, 240; 7 *Id.* 570.

#### STATEMENT OF FACTS.

The appellee, as it name implies, is a mutual aid union or society organized under the statute of this State

for the purpose of life insurance, issuing its policies or certificates of membership under the mutual aid and assessment association plan.

H. M. Wilks became a member of the appellee by the paying of the membership fee and it issued to him its graduated membership certificate or policy insuring his life upon the plans adopted by the appellee.

C. N. Wilks, hereafter designated appellant, was the beneficiary in the policy. The appellant for himself and also as administrator of the estate of H. M. Wilks on the 23rd day of March, 1917, brought this action against the appellee. He set up the policy, alleged that H. M. Wilks left his home and residence at Garfield, Benton County, Arkansas about the 10th of August, 1911, and that he had not been heard from by the appellant or any of his relatives since October 21, 1911; that H. M. Wilks had been continuously absent from the State for more than five years and that under the laws of the State he was presumed to be dead. The appellant alleged compliance on the part of the appellee and H. M. Wilks with all of the conditions of the policy and that appellee after satisfactory proof of the presumption of death had refused to pay the amount due on the policy. Appellant, therefore, prayed judgment against the appellee in the sum of $808.33, the amount due, and for the sum of $96.99, penalty, and the sum of $200 as an attorney's fee together with the sum of $2.94, the amount of the assessment paid by appellant after the alleged presumptive death of H. M. Wilks.

The appellee answered admitting the issuance of the certificate as set up in the complaint. Denied that H. M. Wilks was a resident of the State of Arkansas at the time the certificate was issued to him but alleged that he was temporarily in the State visiting relatives at or near Garfield. The appellee admitted that he left the State on or about August 10, 1911, but denied that he had not been heard from. Denied that he had been continuously absent for more than five years, and denied that relatives had not heard from him within a period of five years.

Denied that H. M. Wilks was dead, that the appellant had made diligent inquiry to ascertain whether he was dead or alive and denied that any sum was due on the policy.

Appellant testified substantially as follows: "That H. M. Wilks was his uncle. Appellant last saw him three miles north of Garfield on the 10th day of August. He had no home of his own but made his home with appellant's father. H. M. Wilks had lived there ever since the death of his mother, about twenty years ago, who lived and died at Exeter, Mo. Witness last heard from Wilks October 8, 1911, by a post card from Parsons, Kansas. Witness exhibited the policy and testified that he had paid all the assessments. Witness applied to the probate court for letters of administration on the estate of H. M. Wilks, and he was duly appointed administrator of his estate. Witness wrote to the chief of police at Columbus, Ohio, and also Indianapolis, Indiana, and testified that he received answers but the purport of these answers is not abstracted. Witness had an advertisement placed in the Kansas City Star. Witness wrote to H. M. Wilks' brother at Snohomish and also to his sister at St. Joseph, Ill. He did not hear from the brother but received an answer from the sister. He did not have the letter and did not know where it is. The purport of the answer is not abstracted. These letters to his relatives were written in 1912. Witness waited four years to write chief of police at Columbus, Ohio. He did not wait five years. He wrote the chief of police in 1916. Witness did not know how long H. M. Wilks had been in Arkansas before he became a member of the appellee. He came to Arkansas and made a visit. He came back most every year and stayed two or three months on an average. He came home about once a year. He might have been away two years before he came back the last time. He told me his occupation was a cook. Witness did not know of his ever following any occupation in Arkansas. H. M. Wilks was a bachelor. His health was good. It was the understanding between witness and H. M. Wilks that witness

should pay the assessments when H. M. Wilks was away. H. M. Wilks told witness that he would not ask witness to be long out of his money. Witness testified that he had received postal cards from H. M. Wilks since 1908 from Oklahoma and other places. Witness could not tell when H. M. Wilks went away whether he stayed more than a month in any one place. Witness could not tell where he went when he left Arkansas the last time, nor whether he left Arkansas or not. Witness could not tell the jury that H. M. Wilks is dead. Witness believed that he was dead. Witness would have heard from him if he had continued to live. He never said anything to witness about going to a foreign land when witness talked to him.

Other witnesses testified tending to corroborate the testimony of C. N. Wilks to the effect that H. M. Wilks made his home when in Arkansas at Garfield with William Wilks, his brother. He had a bed and some dishes and a few clothes there. His sister-in-law Mrs. Mary Wilks, wife of William Wilks, testified that H. M. Wilks made his home at their house; that he left there August 10, 1911, and she had not seen him since, had heard of him through letters to the boys after he left; had not heard from him in the last four or five years.

The court instructed the jury as follows:

"1. The burden is upon the plaintiff to show his right to recover and the extent of his recovery by a preponderance of the evidence."

"2. If you find from a preponderance of the evidence that plaintiff's supposed intestate, H. M. Wilks' home and residence was at and with William Wilks near Garfield, Arkansas, and further find from a preponderance of the evidence that H. M. Wilks left the State and has continuously absented himself beyond the limits of this State for five years successively and in the meanwhile has not been heard from, then the presumption of law is that H. M. Wilks is dead, and you will find for the plaintiff in such sum as you may feel warranted from the proof."

"3. If you find that H. M. Wilks' home and residence was not in Arkansas, as alleged by the plaintiff, at the time of absenting himself from the State, then you will find for the defendant.''

The verdict and judgment were in favor of the appellee, and this appeal has been duly prosecuted.

WOOD, J., (after stating the facts). (1) The only contention made by the appellant here is, that the verdict was contrary to the evidence.

Section 3081 of Kirby's Digest provides as follows:

"Any person absenting himself beyond the limits of this State for five years successively shall be presumed to be dead, in any case in which his death may come in question unless proof be made that he was alive within that time.''

The phraseology of the statute is somewhat ambiguous but the trial court correctly interpreted its meaning in its instruction No. 2. "Any person" as used in this statute means any person who is a resident of this State and who absents himself from his home or residence beyond the limits of the State for a period of five successive years and who has not been heard from by near relatives, friends, or neighbors, those who would naturally make inquiry concerning his whereabouts and who would most likely receive communication from him and be in a position to know whether or not he was living. If he has not been heard from by these or others, his death will be presumed unless there is proof to the contrary.

(2) In view of the nomadic habits of H. M. Wilks as disclosed by the evidence it can not be said as a matter of law that he had anything like a permanent home or residence in this State. It was a question for the jury under the evidence adduced as to whether or not H. M. Wilks was a resident of the State in the first place, and in the second place as to whether or not, if a resident, he had been absent from the State for a period of five successive years without being heard from by those who would most likely hear from him.

The proof on the part of the appellant did not show either of these facts conclusively.

The issues were, therefore, for the jury, and the judgment is correct, and is affirmed.