BURNETT *v.* MODERN WOODMEN OF AMERICA.

Opinion delivered April 20, 1931.

*Coulter & Coulter*, for appellant.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

SMITH, J. This cause was tried in the court below upon an agreed statement of facts, and it appears therefrom that the Modern Woodmen of America, a fraternal beneficiary society, organized under the laws of the State of Illinois, issued a benefit certificate to Jud Watson in 1921, payable, upon the death of the insured, to his uncle, R. P. Burnett.

The monthly assessments were regularly paid until April, 1930, in March, 1922, Watson, the insured, left the State and went to Oklahoma, where he was last heard from directly in 1923. The subordinate lodge at Beebe, of which Watson was a member, knew of his disappearance, but accepted assessments and dues from Burnett, the beneficiary, until April, 1930, at which time demand was made upon the insurer for the payment of the face of the benefit certificate. Liability was denied, however, because of § 78 of the by-laws of the insurance order, which provides that no presumption of death shall arise

from disappearance which does not continue for a period equal to the life expectancy of the insured.

The briefs of opposing counsel contain an interesting discussion of the validity of this by-law, it being insisted by the plaintiff that it is void, as being contrary to § 4111, Crawford & Moses' Digest. This section reads as follows: "Any person absenting himself beyond the limits of this State for five years successively shall be presumed to be dead, in any case in which his death may come in question, unless proof be made that he was alive within that time."

We do not decide the question of the validity of the by-law, quoted above, for the reason that the statute, which we have also quoted, does not apply under the facts of this case.

Exhibited with the agreed statement of facts was the correspondence between the plaintiff beneficiary and the insurance order. One of these letters reads as follows:

"Beebe, Ark., 7/30/26

"Mr. Truman:

"Dear Neighbor and Sir: In answer to yours just received in regards to neighbor Jud Watson will say that he lef hear 4 years ago this past March, and that was the last time I have seen or hear of him only through a woman here. She said she heard from him about one year later, and that he was in Tulsa, Oklahoma, and that he was going under the name of Jack Mete. His reason for leaving hear was a woman trouble, and he gave some bad c'ks, not enough to amount to anything, in regard to his war business. He enlisted here with Company B at Beebe, Ark. I can't at this time give you Major, but can later if necessary, Co. B Infantry 153; can't say whather or not he was caring any war insurance, but think he was as the bonas bill was about all he would talk about. Now in my last letter to you I tol you that he had one sister living in England, Arkansas, but I failed to give you her name, her name is Magie Jackson. She gets her mail at England, Arkansas, Rout

1. The last I seen or heard of him was when he lef hear, and he was working for me at that time as delivery boy and helper in store, so any information you can give me in locating him will be appreciated. With kind regards, will close.

"Respectfully,

"R. P. Burnett."

A reply to this letter was written, which reads as follows:

"Warsaw, Illinois, August 2, 1926.

"Mr. R. P. Burnett,

"Beebe, Arkansas.

"Dear Sir:

"Yours of July 30th regarding Jud Watson received. You say that you heard through a woman that she heard from him about one year after he disappeared, which would have been three years ago. That he was then in Tulsa, going under the name of Jack, and I am not able to make out the last name. Is it Metz? Will you please give them the name and address of this woman, or, if she is in Beebe, find out from her how she came to hear from him, whether or not it was by letter or otherwise.

"I enclose an envelope for your reply.

"Yours truly,

"Truman Plantz, General Attorney."

Indorsed upon this reply and as an answer to the questions which it contained was the following notation:

"Answer this woman died about one and one-half years ago, and the reason she come to hear from him he was courting her, and after he left he corresponded with her, and he gived his name as Jack Metz.

"Respectfully,

"R. P. Burnett."

The case of *Wilks* v. *Mutual Aid Union,* 135 Ark. 112, 204 S. W. 599, was one in which the beneficiary in a membership certificate or policy of insurance sought to recover thereunder upon the presumption of death which

§ 4111, Crawford & Moses' Digest, creates in the cases to which it applies. We there said:

"The phraseology of the statute is somewhat ambiguous, but the trial court correctly interpreted its meaning in its instruction No. 2. 'Any person' as used in this statute means any person who is a resident of this State, and who absents himself from his home or residence beyond the limits of the State for a period of five successive years and who has not been heard from by near relatives, friends, or neighbors, those who would naturally make inquiry concerning his whereabouts and who would most likely receive communication from him and be in position to know whether or not he was living. If he has not been heard from by these or others, his death will be presumed unless there is proof to the contrary.

"In view of the nomadic habits of H. M. Wilks, as disclosed by the evidence, it cannot be said as a matter of law that he had anything like a permanent home or residence in this State. It was a question for the jury, under the evidence adduced, as to whether or not H. M. Wilks was a resident of the State in the first place, and in the second place as to whether or not, if a resident, he had been absent from the State for a period of five successive years without being heard from by those who would most likely hear from him."

The statute, as thus construed, applies only to residents of the State, and does not apply to a resident who had ceased to be such at the time of his final disappearance. The purport of the correspondence, set out above, is that the insured had ceased to be a resident of this State and had become a resident of Oklahoma. It was recited that his reason for leaving this State was "a woman trouble," and that "he gave some bad c'ks." These circumstances fully sustain the contention of the insurance order that the insured did not have anything like a permanent home or residence in this State, and that the statute therefore did not apply.

There was therefore no sufficient proof of death, and the cause was properly dismissed, and that judgment must be affirmed, and it is so ordered.