METROPOLITAN LIFE INSURANCE COMPANY *v.* WILLIAMS.

4-5383 125 S. W. 2d 441

Opinion delivered February 27, 1939.

884

*Moore, Burrow & Chowning* and *W. S. Mitchell, Jr.,* for appellant.

*Chas W. Garner,* for appellee.

MEHAFFY, J. The appellee instituted this action against the appellant, alleging in her complaint that Leroy Williams, now presumed to be dead, purchased from the appellant three policies of life insurance in which he insured his own life and named appellee as beneficiary; the numbers, dates and amounts of policies are set forth, and then appellee alleges that in September, 1923, while a bona fide resident of Pulaski county, Arkansas, the deceased disappeared, and has since that date absented himself beyond the limits of the state; that appellee has made diligent inquiry and search among his friends and people in Arkansas with whom he naturally would have communicated had he been alive; said inquiry and search being continuous in intensity since the date of his disappearance; that she has neither seen nor heard of him since his disappearance; that the premiums on said policies were one dollar per week and soon after insured's disappearance appellant's agents advised her to keep the premiums paid up and promised her that when the insured returned, her money would be refunded or else the benefit in the policies would be paid to her after she had paid premiums for five years; relying on this advice and promise, she paid the premiums to and including September 28, 1931, when she made a claim upon the appellant by completing forms sent by it which were accepted by it; her claim was denied; appellant stating

that the insured was alive as late as May 6, 1931, but refused to inform appellee of insured's whereabouts; appellee, believing the statement that the insured was alive, discontinued payment on September 28, 1931; the statement of appellant that insured was alive on May 6, 1931, is untrue; appellant knew at the time it made it that it was untrue, and it was made for the purpose of misleading appellee, and did mislead her and caused her to discontinue payment of premiums or pressing her claim to a conclusion at that time; appellee has since made further diligent search and inquiry and believes, and therefore alleges, that the insured is deceased; appellee would have pressed her claim to conclusion when she formerly filed same but for the erroneous and fraudulent statement of appellant, its agents and servants; that she has only recently discovered the untruthfulness of said statement; said insurance was written on the endowment plan and had a legal reserve and cash surrender value sufficient to maintain the policy and it was appellant's duty to pay the premiums and thus keep the insurance in full force and effect so long as the reserves lasted; that is was appellant's duty to keep appellee truthfully and correctly advised of the whereabouts of insured and the amount of reserves, but it failed and refused to do so; she had repeatedly demanded payment, but her claims have all been refused by appellant; she then prayed judgment for $1,620, 12 per cent. penalty and a reasonable attorney's fee.

Appellant filed a general denial to the material allegations of this complaint. It, however, admitted the issuance of the three policies of insurance on the life of Leroy Williams, but alleged that the loss-payable clause provided that payments should be made to the executor or administrator of the insured's estate unless appellant elected to pay to another, and alleged that it has not so elected. The answer then sets out the numbers, dates and amounts of policies. An amended and substituted answer was filed alleging that the policies had lapsed for non-payment of premiums. It prayed that the suit be dismissed.

An amended and substituted complaint was filed alleging that a certain policy was $410 instead of $800. She alleged that insured was a bona fide resident of the state of Arkansas and that shortly after he disappeared the local agent and general agent, one of whom was named Mr. Roy, both residing in the city of Jonesboro, came to her home and persuaded her to keep the premiums paid up, and repeated the statement in her original complaint.

Appellee pleads as exhibits copies of communications received from the appellant, and prays for judgment in the sum of $820 plus 12 per cent. penalty and reasonable attorney's fee. She prayed in the alternative for judgment in the sum of $422 with interest at 6 per cent. per annum from October 19, 1931, until paid.

Appellant filed answer denying the allegations and pleading as in its original answer, and pleaded the statute of limitations as a bar to her cause of action.

Hattie Williams lived with her husband, Robert Williams, in Batesville, Mississippi. Robert Williams died in July, 1919. His brother, Leroy Williams, lived with Robert Williams, and after Robert Williams' death the appellee kept house and Leroy Williams was in and out just like he was when his brother was living. Appellee moved to Jonesboro in the fall of 1922, and in the spring of 1923, Leroy Williams lived with appellee just like he did in Mississippi. Leroy Williams bought policies of insurance on his life and made appellee beneficiary. The two policies were for $410 each, with weekly premiums. The first appellee knew about the insurance was when Leroy Williams left the money with her to pay Mr. Roy, the agent of the company. Leroy Williams paid the premiums on these policies until he left in the fall of 1923 or 1924. He said he was going to St. Louis, but appellee has never heard from him since and has made all efforts to find him. Wrote different friends in Jonesboro that knew him, wrote to Clarksville, Mississippi, where he said he was raised, and kept on looking around; she had friends she wrote to every week and asked them to let her know about Leroy Williams; she

wanted to know whether he was living or not; she did not pay anything on the policies for three or four weeks after he had gone; Mr. Roy, who was collecting insurance, asked appellee to keep the policies up, but it was not until after he and the superintendent came out and persuaded her; they both told her that if she kept the insurance up for a period of seven years and Leroy did not come back, the company would pay her the face value of the policies. She then paid on the policies, which were behind, and continued to pay until sometime in September, 1931. In the fall of 1930 or 1931 she talked to the agent in Little Rock and he brought two blanks out which she signed at his request; she thought he knew what he was doing; she made claims for the proceeds of the insurance in 1930 or 1931; they did not pay her and the manager, or assistant manager from the home office, told her he knew Leroy's whereabouts, but that he did not want appellee to know; she later got a letter from the home office on October 14, 1931. The following letter was introduced:

"Mrs. Hattie Williams

"1724 Pulaski Street

"Little Rock, Arkansas

"Dear Madam:

"We are sorry to find that you have found it necessary to write us in connection with your insurance. The exact terms and provisions of your policies are outlined on the third page of the policy form indicating that premium payments must be continued for at least ten years and the policies kept in force for that period before they will be eligible for the payment of a cash surrender value.

"We are today writing direct to the insured to find out whether he is willing that we should indicate to you his present address. We will notify you further as soon as we hear from him.

"Yours truly,

"(Signed) W. S. Prince,

"Manager."

Appellee testified that she received another letter from the home office dated August 26, 1931, and this letter was introduced as follows:

"Mrs. Hattie Williams
"1724 Pulaski Street,
"Little Rock, Arkansas.
"Dear Madam:

"We are sorry to learn that you have again found it necessary to write us in connection with your insurance. We are still awaiting certain necessary information from the manager of our Little Rock, Arkansas district and we are today requesting him to notify us promptly. As soon as we receive his letter we will be in a position to determine the action to be taken on your request for cash surrender.

Please be assured of our wish to be of every possible service to you.

"Yours truly,
"(Signed) W. S. Prince, Manager."

Both of these letters were from the home office in New York and were written on the company's stationery. Appellee relied on these statements and continued her search for Leroy and found a man they called Fats Williams that the company had communicated with, and he was supposed to be Leroy. Appellee talked to the agent of the company about this in 1933 or 1934, and he said he did not know who this man was, but he would find out. Appellee got acquainted with Leroy Williams in Mississippi; he was then about 18 or 19 years old and he was 22 or 23 when the insurance was written; he gave appellee three policies and asked her to keep them because he wanted to leave something so witness could bury him if anything happened to him; he paid the first premiums himself; appellee's name does not appear on any of the policies. The agent told her that they did not put the name of beneficiaries on Metropolitan policies any more. Leroy Williams was staying with witness in Jonesboro when he took out the policies; he would come and stay two or three weeks or a month and go out on Saturday where they had pay day at different mills like

all gamblers; he did not work any place only when he had to; then he worked at sawmills and lumber camps; he came to Jonesboro in February, 1923, and was in and out until he left either in 1923 or 1924; so far as witness knew he had no reason to leave, and he was in good health the last time she saw him. She started trying to locate him in 1930 or 1931. Leroy and his brother said all their people died during the flood; she never saw any of their relatives; when she first put her claim in she talked to the agent who brought the forms out; she wrote to the home office; was living in Little Rock at the time; the letter to the home office was written in February, 1931; written entirely in witness' handwriting, and states that Leroy Williams disappeared in 1923; at the same time that Leroy Williams was staying with her in Jonesboro, another boy came in and out whose name was Leroy Patton; he came and got a room awhile, and he would stay in jail and run around. She and Leroy Patton were arrested and fined at Jonesboro; she did not know Leroy Patton before he came to her house; came with some boys that roomed there. He was in Jonesboro when witness left; she did not tell Malinda Watkins that she had a husband, and that he had come to see her in Jonesboro. She did not pay premiums on all three policies for seven years; one of them lapsed in January, 1927, or 1926; she did not sign Leroy Williams' name to the application.

J. E. Roy testified in substance that he lived in Jonesboro in 1922 and 1923, and was agent for the Metropolitan Life Insurance Company writing and collecting insurance; went to work for the company in 1921, and worked until November, 1925; he worked for them again in 1930, and quit in 1932; knows Hattie Williams, the appellee, and knew Leroy Williams and wrote three policies on his life in 1923; Hattie and Leroy both paid premiums; Leroy Williams lived on Oak street when he bought the insurance; had no conversation with him as to who would be beneficiary; Hattie told him that Leroy had left and she was going to drop the insurance, and witness told her that, if she continued to pay premiums for five to seven years and would file a disappearance

claim, the company would pay her the insurance; she left Jonesboro and came to Little Rock and sent the money and premium receipt book back to witness; does not know that he made any promise that the money would be refunded; the company had two superintendents and each had five agents with whom he worked; they were anxious to keep business on the books; has not seen nor heard from Leroy Williams since 1924; does not know whether Swaringen, superintendent, talked to Hattie or not; wrote Hattie Williams that, if she would get in touch with an agent, he would transfer the business, but could not transfer it if she was not in reach of another agent; she was paying the premiums when witness quit.

H. A. Cleary lived in Jonesboro for 19 years; was in the installment business; knows Hattie Williams and knew Leroy Williams; does not know when he disappeared from Jonesboro; it has been a long time since witness saw him; knows he has not seen him since 1923 or 1924; has seen a boy today whom he knew as Leroy Patton; he and Leroy Williams are two different negroes; knows Leroy Williams, but does not know his whereabouts; has not talked to anybody about this case; knows Swaringen in Jonesboro; he was assistant manager of the appellant in 1923 or 1924.

Hattie Williams then testified that she knew Swaringen in Jonesboro; he was the man who talked to her about paying premiums; he told her that, if she kept it up and Leroy did not come back, she could file a nonappearance claim and be paid the face amount of the policy, and if he did come back they would refund the money she had paid. After he talked to her she kept the premiums paid. Mr. Swaringen said he was one of the officers of the company.

Mr. Charles J. LaGrassa is assistant manager of the appellant in charge of the company's records; lives in New York and has been employed by appellant for 33 years; part of his duties consist in keeping, supervising and preserving records, papers, documents and files in the home office, relating to policies of life insurance issued by appellant insuring the lives of individuals in

Arkansas; the policies sued on were issued on the life of Leroy Williams; issued through the Jonesboro office; amount $410 on the endowment at age 80 plan; the original application was attached to witness' deposition. Pursuant to the application of Leroy Williams, policies were issued; Hattie Williams was never designated as beneficiary. He then testified that the policies had lapsed for nonpayment of premiums in 1931; one policy lapsed in 1926, but that policy is not involved in the suit.

Leroy Patton lives in Cooter, Missouri; is 38 years old; knows Hattie Williams; he visited her at Jonesboro, and she was supposed to be his common-law wife; stayed with her until August, 1923, when he married; witness testified that he signed the policies as Williams and Mr. Roy examined him and told him he would not have to go to the doctor; that this was the first time he ever used "Williams" in his life; did not write the words "Leroy Williams" on where it says signature of applicant on policy No. 70608612; that these policies were issued on his life by appellant; he wrote his name "Leroy Williams" on the policies. Mr. Roy later told him he would have to be examined. Mr. Roy left a blank with him so he could sign it when he was examined; he signed it twice; the words "Leroy Williams" were already written on the policy; he signed the applications as "Leroy Williams," because appellee had told persons that he was her husband, and he signed Williams, because the law would arrest a man for sleeping with a woman, if he could not produce a license; they arrested them anyhow; did not know whether Hattie Williams had a brother-in-law or a husband; does not know when she left; since 1930 witness has been in Blytheville and Madison county, Illinois, and for the last three years in Cooter, Missouri; has been fined for drinking, gambling, transporting whiskey, and petty larceny, but never served any time in the pen; Mr. Butler came to see witness at Cooter, and before that he did not know that Hattie had filed a claim; company made no connection with him until 1931; has not been subpoenaed; came

because Mr. Butler came after him, and told him he would give him two dollars a day and expenses.

Malinda Watkins testified that she heard Hattie Williams say her husband was away, but would be home; she has never seen but one "Leroy"; did not know the name "Patton"; all she knew was Leroy Williams.

John Bennett knew Hattie Williams, and knew Leroy Patton, and knows a boy named Leroy Williams who is about ten or twelve years old; if there was another Leroy Williams there with Hattie, witness did not know it; there could have been another man.

Dr. W. C. Overstreet testified that he had examined Leroy Patton for insurance, but it was under the name of Leroy Williams; did not know the other Leroy Williams, unless this is he; maybe five years ago he met another Leroy Williams.

C. D. Bolle, teller at the Union National Bank, examined the application and also the letter supposed to be written by Hattie Williams; in his opinion the signature which appears on the application was written by the same person who wrote the letter.

Leroy Patton, recalled, testified that he wrote the words "Leroy Williams" several times on a piece of yellow paper; has not written "Leroy Williams" since he wrote it on the policy until Mr. Butler came.

Bolle was recalled and testified that he does not believe "Leroy Williams" in the application, and the words "Leroy Williams" on the white piece of paper were written by the same person; does not believe that the words "Leroy Williams" on this application were written by the same person who wrote these words on the yellow sheet; does think that the same person wrote the words on the yellow sheet that wrote "Leroy Williams" on the applications for policies.

Hattie Williams testified in rebuttal that she got acquainted with Leroy Patton just before Leroy Williams left; this Leroy Patton is not the boy she has been paying insurance on; heard Patton testify that he signed one of the applications; if he did witness was not there; she did not sign any of the applications; does not think

the woman who lived across the street knows; witness scarcely ever saw her; she never told this woman that she had a husband; everybody in Jonesboro knew that her husband was dead; when Leroy left he gave witness the policies, and said he was going to Missouri.

J. E. Roy testified on rebuttal that he had known Leroy Patton 12 or 15 years; if he ever bought any insurance witness does not remember it; Leroy Williams bought insurance; Williams and Patton are not one and the same person; talked to the lawyer who got killed some time last summer; he came to Trumann to see witness, and had two pictures of different negroes and asked witness who they were; witness told him one of them was Leroy "Fats" Williams and the other he did not know; Leroy "Fats" Williams was not the one that disappeared; Mr. Garner sent witness a picture of Leroy Patton and a white man, and asked witness if he could identify them; witness knew both Leroy Williams and Leroy Patton.

There was a verdict and judgment for appellee for $820 and interest at 6 per cent. per annum on October 19, 1931, and a statutory penalty of 12 per cent. and $200 attorneys' fees.

The appellant contends first that the court erred in refusing to instruct the jury to return a verdict for appellant, because it says, first, appellee failed to establish that she was entitled to the proceeds of the policies sued on, and sets out the policy and the statement of appellee that she was the beneficiary. The following provision of the policy is relied on:

" 'To pay......................................................the amount stipulated..............................to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph,' which said paragraph reads as follows:

" 'The company may make any payment or grant any forfeiture privilege provided herein to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the

same by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this policy have been satisfied.' ''

The appellant alleged that it had not elected to pay the appellee the proceeds of the several policies, and that appellee has no right to maintain this suit.

The undisputed evidence shows that appellee was told both by the agent and one of the superintendents that, if she would pay the premiums for a certain number of years, the face value of the policy would be paid to her. She relied on this and paid the premiums. Moreover, the appellant knew about this and undertook to show that the insured was alive. It first discovered a Leroy Williams who was known as ''Fats'' Williams, and told appellee that they had discovered Leroy Williams, the insured, and that he was alive. They evidently discovered that ''Fats'' Williams was not the insured, and then they discovered one Leroy Patton in Cooter, Missouri, who claimed that he represented himself to be Leroy Williams and took out the policies. After appellant told the appellee that the insured was alive, she stopped paying premiums. Appellant, however, says that appellee presented no testimony which even purports to bring herself within the rule laid down in *Metropolitan Life Insurance Company* v. *Fitzgerald,* 137 Ark. 366, 209 S. W. 77, and followed in the disappearance case of *Metropolitan Life Ins. Co.* v. *Fry,* 184 Ark. 23, 41 S. W. 2d 766. The court said in the Fitzgerald Case:

''The trend of our decisions shows that the statute requiring every action to be prosecuted in the name of the real party in interest has received a very liberal construction with the view of effectuating the wise purpose to permit those who are the real parties in interest to a cause of action to maintain the suit.''

The court further said in that case: ''There is no contention that the appellant has made, or would make, payment to some one other than appellee under the terms

of the option provided in the policy or that any one else was entitled to such payment. If an administrator had been appointed and had instituted this suit the uncontroverted facts of the record prove that, in that event, the amount to be recovered under the policy would go to the appellee as the real and only party in interest.

"Therefore, it would be magnifying form above substance and contrary to both the letter and spirit of the statute to hold that the appellee could not maintain the suit."

In the instant case, there is no contention that the appellant had made or would make payment to someone other than appellee, and in addition to this, it had told the appellee that it would pay to her. All that is said about the right to sue in the case in 184 Ark. referred to, is that the parties to the suit were entitled to his estate, and there being no creditors, were entitled to maintain the action.

It is contended, however, that the court, in instruction No. A, committed error, because the instruction closed with the following language: "Thus insuring his own life in said sum in favor of the plaintiff, Hattie Williams," etc.

There could have been no prejudice in this statement, because she had, by contract and agreement with the appellant, actually become the beneficiary. It is true that the authority of an agent cannot be established by the mere fact that the person claiming such authority has exercised it; but in this case the evidence itself shows that Roy and the superintendent that visited appellee were both agents of the company. Moreover, the company, as we have already said, knew all about the facts.

It is next contended that the court erred in refusing to instruct a verdict for appellant, because appellee's proof did not bring her case within the rule of the presumption of death statute. The statute reads as follows:

"Any person absenting himself beyond the limits of this state for five years successively shall be presumed to be dead, in any case in which his death may come in ques-

tion, unless proof be made that he was alive within that time." Pope's Dig., § 5120.

We think this is the most serious question in the case, and that it is a very close question as to whether he was a resident of Arkansas at the time he disappeared, and whether the evidence brings it within the statute.

The evidence shows that insured came to Jonesboro in February, 1923. According to the evidence of appellee, the insured disappeared in 1923 or 1924; she is unable to say which; but there is other evidence tending to show that he disappeared in the fall of 1924. This question, however, was submitted to the jury on an instruction requested by appellant, which reads as follows:

"In order to recover the face amounts of any of the policies the plaintiff must prove by a preponderance of the evidence that the person whose life was insured under the policies sued on herein is actually dead unless you find from a preponderance of the evidence that the insured when last heard from was a resident of Arkansas, and that he has been absent from the state of Arkansas for a period of at least five years from the ................ day of September, 1923, or 1924, and that during that time he was not heard from by near relatives, friends, or neighbors, who would be most likely to receive communication from him or be in a position to know whether or not he was living. In the event that you so find, a presumption arises that the insured is dead which presumption, however, may be rebutted by proof on the part of the defendant."

The jury were told plainly in this instruction that unless they found from a preponderance of the evidence that the insured, when last heard from, was a resident of Arkansas, and that he has been absent from the state of Arkansas for a period of at least five years, from September, 1923, or 1924, and has not been heard from by relatives, friends, or neighbors who would be most likely to hear from him and to know whether he was living, then the presumption arises that he is dead; but that this presumption might be rebutted by proof.

That question, having been submitted to the jury under instructions submitted by the appellant, the jury's finding is conclusive here, if there is any substantial evidence to support it. We are of opinion that the evidence was sufficient to justify the finding of the jury.

The evidence must show that insured was a resident. of the state of Arkansas. This court said, in the case of *Burnett* v. *Modern Woodmen of America,* 183 Ark. 729, 38 S. W. 2d 24: " 'Any person' used in this statute means any person who is a resident of this state, and who absents himself from his home or residence beyond the limits of the state for a period of five successive years, and who has not been heard from by near relatives, friends, or neighbors, those who would naturally make inquiry concerning his whereabouts and who would most likely receive communication from him and be in position to know whether or not he was living. If he has not been heard from by these or others, his death will be presumed unless there is proof to the contrary.''

Both the residence and the absence beyond the limits of the state must be proved, but may be proved by circumstantial evidence; but neither death nor the fact of absence can be inferred from the mere fact of disappearance. *Met. Life Ins. Co.* v. *Fry, supra.*

It is next contended by the appellant that the court erred in not directing a verdict in appellant's favor, because the statute of limitations had barred appellee's cause of action.

The appellee filed her disappearance claim demanding the proceeds of the policies in the fall or winter of 1930. She had paid the premiums up to this time and up to 1931, and then her claim was denied in August, 1931, because appellant claimed that the insured was alive, and it had located him. When this false claim was made, appellee believed it to be true and ceased making payments. It developed that the person it claimed was Leroy Williams was a person named "Fats" Williams, and no one contends now that he was the insured.

It is a general rule that where one has deceived another or where, through active wrong or negligence, he

misleads another and causes him not to file suit, the statute is tolled or suspended until it is discovered that the representations were false. If a defendant intentionally or negligently misleads plaintiff by his representations and causes him to delay until the statutory bar has fallen, the defendant will be estopped from pleading the statute of limitations. *Missouri Pacific Rd. Co.* v. *Davis,* 186 Ark. 401, 53 S. W. 2d 851; *Wright* v. *Lake,* 178 Ark. 1184, 13 S. W. 2d 826.

The appellee was caused to stop paying premiums, and to not press her claim by the misleading information of the appellant in stating that it had discovered the insured alive. The person discovered at that time was "Fats" Williams, and it is not contended now that he was insured, and he was not present as witness at the trial.

The appellant then found another negro in Missouri which it claimed was Leroy Williams, but this was after the suit was brought. We think there is no merit in the plea of the statute of limitations.

It appears from the whole case that this appellee paid the premiums with the consent and at the suggestion of the appellant. This court recently said:

"In *Cronan* v. *Metropolitan Life Ins. Co.,* Supreme Court of Rhode Island, reported at p. 618, 147 Atl., 50 R. I. 323, it is said: 'The law is well settled that a beneficiary who pays premiums or loans money upon the security of the policy acquires in the policy a vested right which will be protected in equity against one who thereafter, without valuable consideration, becomes the substituted beneficiary. Although the policy contains a clause to the effect that no assignment of the policy will be recognized unless consented to by the insurance company, a beneficiary who acquires vested rights is only required to notify the insurance company of the fact before payment is made to another person.' " *Reilly* v. *Henry,* 187 Ark. 420, 60 S. W. 2d 1023.

Our conclusion is that the evidence is sufficient to support the verdict, and the judgment is, therefore, affirmed.