### BACIOCCO v. PRUDENTIAL INS. CO. OF AMERICA et al.

District Court, N. D. California, S. D.
November 14, 1927.

No. 17619.

1. **Insurance** �441�e665(6)—Evidence held not to show that insured committed suicide.

In suit on life policy, insurer *held* to have failed to sustain burden of proving that insured committed suicide.

2. **Insurance** �441�e646(7)—Insured is presumed not to have committed suicide.

The presumption of law is that an insured did not commit suicide.

3. **Insurance** �441�e529—Involuntary death by drowning is death by "external, violent, and accidental means," within meaning of life policy.

Involuntary death by drowning is a death by "external, violent, and accidental means," within life policy providing additional benefits in such event.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, External, Violent, and Accidental Means.]

4. **Insurance** �441⟒646(6)—Death of insured by external and violent means is presumed accidental.

Where death of insured was caused by external and violent means, it will be presumed that it was accidental.

5. **Insurance** �441⟒585(1)—Where partners procured life insurance in favor of each other as protection to business, on death of one, other held entitled to proceeds as surviving partner, as against widow's claim to proceeds as community property (Civ. Code Cal. §§ 164, 172; Code Civ. Proc. Cal. § 1585).

Where two partners each procured a policy on his life at the same time and in the same amount, payable to the other as a protection to the business, paying the premiums from partnership funds, on the death of one, the other *held* entitled to the proceeds of the policy as surviving partner, as against claim of widow to the proceeds as community property, under Civ. Code Cal. §§ 164, 172; her remedy being through an accounting of the partnership business, under Code Civ. Proc. Cal. § 1585.

At Law. Action by Stephen Baciocco against the Prudential Insurance Company of America and Zelia Mary Ertola. Judgment for plaintiff.

I. F. Chapman, of San Francisco, Cal., for plaintiff.

Knight, Boland & Christin, of San Francisco, Cal., for defendant Prudential Ins. Co. of America.

Jones & Dall, of San Francisco, Cal., for defendant Ertola.

ST. SURE, District Judge. Plaintiff sues to recover upon a policy of insurance issued upon the life of Arnold Ertola, pay-

able to plaintiff as beneficiary, for the sum of $5,000, with $5,000 additional in event the insured should die as a result of injury suffered through "violent and accidental means." The policy contains a provision relative to suicide, which enters into the determination of the case. It reads as follows: "If, within one year from the date hereof, the insured shall die by suicide—whether sane or insane —the liability of the company shall not exceed the amount of the premiums paid on this policy."

Plaintiff and Ertola were business partners. On May 8, 1925, each took out a life insurance policy for the same amount, and each named the other as beneficiary, describing him as "partner of insured." One premium on each policy was paid from the partnership funds. Plaintiff asserts that the purpose of this mutual issuance of policies was to protect the surviving partner against business loss which might occur by reason of the death of the other partner.

Zelia Mary Ertola, named as a defendant, is the widow of Arnold. It is admitted that Arnold Ertola and Zelia Mary Ertola were married in 1918, and continued to be husband and wife, domiciled in California, until the death of Ertola. The surviving wife claims, under the laws of California, one-half of the proceeds of the policy, upon the ground that the same constituted the community property of herself and husband.

Before the trial defendant insurance company deposited with the clerk of this court the sum of $5,000 to the credit of plaintiff, and gave notice to parties that it would thereafter move for satisfaction of judgment without further costs to it.

The undisputed facts show: Ertola was 29 years of age when the policy was issued. He had a wife and two children. He was a temperate, industrious man. On April 14, 1926, he made a trip to Ukiah, returning to San Francisco in an automobile previously hired by him. He delivered the automobile at a garage on Fell street, San Francisco, about 2 o'clock in the morning of the 18th, when he held a 15-minute conversation with the auto owner, who is certain he had not been drinking, and to whom he appeared in every way rational. Six hours later his lifeless body was found in the ocean, lying between rocks near the Cliff House. The body was fully dressed; the hat near by. The clothing was in good condition. One of the hip pockets "looked like it had been pulled out or had been emptied." It was necessary for the life guards to hoist the body about 25 feet, and it may have been dragged a little over the rocks. Decedent's nose was fractured, and there was a small laceration over the left upper eyelid. The autopsy surgeon stated that death was caused by drowning.

The parties are agreed that, if Ertola committed suicide, there can be no recovery under the terms of the policy; that, if he died by natural means, recovery to the extent of $5,000 may be had; that, if he died as a result of injuries suffered through "violent and accidental means," $10,000 may be recovered.

Defendant insurance company assumes, as it must, the burden of proving that Ertola committed suicide. The action of said defendant in depositing $5,000 in court to the credit of plaintiff in satisfaction of his claim weakens the argument advanced in support of its theory of suicide. It is urged, however, that the evidence shows that Ertola was a party to a liaison lasting several months and until his death, and also that through Ertola's waste or neglect the partnership's finances were in a bad way. It is true there is evidence tending to show that Ertola was a philanderer, and concerning the partnership affairs the evidence also shows that, about a year before the death of Ertola, plaintiff and he became partners in a small sheet metal business. At the outset plaintiff advanced $2,600 for the purchase of the business, and Ertola gave plaintiff his promissory note for half that amount in payment of his one-half interest. It would seem that Ertola was the practical man in the business, as he personally did most of the work. It was natural, under the circumstances, that he should assume active management of affairs.

[1, 2] But the surviving partner has no complaint to make of Ertola's conduct in any particular. He says that Ertola was an honest man and that he left his accounts in fair shape. So, for aught that appears, neither Ertola's philandering nor his conduct of partnership affairs shows a motive for suicide. Defendant insurance company has failed to sustain the burden of proof placed upon it. Besides, the presumption of law is that Ertola did not commit suicide. See Neasham v. New York Life Insurance Co. (D. C.) 244 F. 556; Jenkin v. Pacific Mutual Life Ins. Co., 131 Cal. 121, 63 P. 180; Wilkinson v. Standard Accident Ins. Co., 180 Cal. 252, 180 P. 607; Tabor v. Mutual Life Ins. Co. (C. C. A.) 13 F.(2d) 765; Wilkinson v. Nat. Life Ass'n (Iowa) 211 N. W. 238.

[3] The evidence shows that Ertola met his death by drowning. It is well settled that an involuntary death by drowning is a death by

external, violent, and accidental means. Manufacturers' Accident Indemnity Co. v. Dorgan (C. C. A.) 58 F. 945, 954, 955, 22 L. R. A. 620. See, also, Konrad v. Union Casualty Co., 49 La. Ann. 636, 21 So. 721; Silva v. Fidelity & Casualty Co., 252 Mass. 328, 147 N. E. 858; Wehle et al. v. U. S. Mutual Accident Ass'n, 153 N. Y. 116, 47 N. E. 35, 60 Am. St. Rep. 598.

[4] Death having been caused through external and violent means, it will be presumed that the death was caused by accidental means. Standard Life & Accident Ins. Co. v. Thornton (C. C. A.) 100 F. 582; Preferred Accident Insurance Co. v. Fielding, 35 Colo. 19, 83 P. 1013, 9 Ann. Cas. 916; Fort Worth Mutual Benevolent Ass'n v. Jennings (Tex. Civ. App.) 283 S. W. 910; Buckley v. Massachusetts Bonding & Ins. Co., 113 Wash. 13, 192 P. 924; Postler v. Travelers' Ins. Co., 173 Cal. 1, 158 P. 1022; Withers v. Pacific Mutual Life Ins. Co., 58 Mont. 485, 193 P. 566; Watkins v. Reliance Life Ins. Co., 152 Ark. 12, 238 S. W. 10; Ætna Life Ins. Co. v. Little, 146 Ark. 70, 225 S. W. 298.

[5] Defendant Zelia Mary Ertola contends that, because the premium on her husband's policy was paid from the partnership funds, which were of the community, the proceeds of the policy are community property. Section 164, Civil Code of California. She further contends that the husband cannot make a gift of community property, or dispose of the same, without a valuable consideration. Section 172, Civil Code of California. While conceding these propositions, plaintiff argues in his own behalf that there was no gift of any property, and that the executed contract between the partners, in which there was a mutual issuance and exchange of insurance policies for the protection of the business, was for a valuable consideration.

Plaintiff explains the transaction relative to the taking out of the policies as follows: "I invested the money in the business, and I said [to Ertola], 'You have no money; I would like to have a little protection.' A couple of agents came around for business, and I thought it was a good idea to have a little protection for the money invested. He [Ertola] said, 'Let us get about $2,500 policies, one on you, and one on me, that in case anything should happen, if you should die, or if I should die, we would have some protection for the business and break about even.' The agent came along and talked us into $5,000, and we decided to get $5,000—$5,000 on me, and '$5,000 on him.'" The policies were issued on the same day, the premium was paid out of the partnership funds, and Mrs. Ertola was not consulted.

Counsel for defendant Zelia Mary Ertola asserts that the rule stated in New York Life Ins. Co. v. Bank of Italy, 60 Cal. App. 602, 214 P. 61, is applicable to this case. We do not think so, as the facts in the instant case are different. In the Bank of Italy Case the husband made a gift to a third party without the consent of the wife. In the case before us, as we see it, there was no gift. The facts show that the execution of the life insurance policies was an ordinary business transaction between the partners, for the benefit of and the protection of the partnership.

It follows, from what we have said, that the money due on the policy should be paid to the plaintiff as the surviving partner. Under section 1585 of the Code of Civil Procedure of California, the surviving partner has the right to administer and settle the partnership affairs, but may be compelled to render an accounting. It is agreed that a settlement of partnership matters cannot be had in this court, and that defendant Zelia Mary Ertola must be relegated to her right to proceed against plaintiff as surviving partner, as provided in section 1585, Code of Civil Procedure.

It is ordered that plaintiff have judgment against the defendant the Prudential Life Insurance Company of America for the sum of $10,000 and costs of suit. Plaintiff is requested to prepare and submit for the court's signature special findings in accordance with this opinion.