**YOUNG v. AETNA LIFE INS. CO.**
No. 20264.

District Court, E. D. Pennsylvania.
Feb. 14, 1940.

Judgment Affirmed June 29, 1940.
See 113 F.2d 601.

---

Thomas E. Comber, Jr., of Philadelphia, Pa., for plaintiff.

Paul Reilly, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This case was tried before the court and a jury which returned a verdict for the plaintiff.

Suit was on two policies issued by the defendant on the life of the plaintiff's deceased husband. The policies contained a provision for double indemnity in the event of accidental death by bodily injury. The provision read as follows:

"If the death of the insured occurs while this policy is in force and such death results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means within ninety days from the occurrence of such accident, and if such accident is evidenced by a visible contusion or wound on the exterior of the body (except in case of drowning and internal injuries revealed by an autopsy), and if such death does not result from suicide, while sane or insane, nor from military or naval service in time of war, nor from an aeronautic flight or submarine descent, nor directly or indirectly from disease in any form, then the company will pay a sum equal to the sum herein described as the sum insured in addition thereto."

At the outset of the trial the defendant moved to dismiss the complaint on the ground that the plaintiff's statement failed to disclose a cause of action. The motion to dismiss was denied.

Following the verdict the defendant moved (1) to set aside the verdict and to enter judgment in its favor in accordance with the motion to dismiss and (2) for a new trial on grounds of error in the court's charge which will hereafter be discussed and for plaintiff's alleged failure adequately to prove her case.

A brief statement of the essential facts is appropriate prior to review of the defendant's motions.

On the night of April 29, 1937, the deceased, a coal company executive, worked at his office until midnight. Accompanied by an assistant he left at that time and had a bite to eat. At about 12:45 a. m. the deceased, appearing in normal condition although somewhat tired, departed in his car for his home. On the way home the deceased's car collided with a parked auto, damaging both vehicles. He arrived home about a half hour later, appearing nervous and tired. He arose about 8 o'clock, left an hour and a half later, and then called on the owner of the parked car and told him to have the necessary repairs made. He then drove to his own repair shop and made arrangements as to his own car.

The deceased returned to his home about 10 a. m. He then appeared in terrible pain and died within half an hour before the arrival of a physician.

Dr. Wadsworth, Coroner's physician in Philadelphia; Dr. Wolferth, a heart expert; and Dr. Blackburn, the family physician who made out the death certificate, testified in plaintiff's behalf.

Dr. Wadsworth performed an autopsy about three weeks after the deceased's death. In substance he testified that the autopsy disclosed a severe bruise on the left hand of the deceased; a bruise, two by six inches, on the deceased's chest; also that the latter's heart was a trifle oversize, that there was a collection of calcareous (limy) deposit on the wall of the anterior coronary artery which was itself somewhat reduced in size. He said that there was no indication whatever of an active disease process either in the heart or coronary artery or any kind of condition which could be considered as a complication in the cause of death. Dr. Wadsworth definitely diagnosed the cause of death as a result of a clot formed on the coronary artery—the clot he said resulted from a blow on the deceased's chest. He emphasized that it was an injury on top of a pre-existing condition, not a disease, which was the cause of death.

Dr. Wolferth, the heart specialist, testified that in his opinion the accident was the cause of the death.

Dr. Blackburn, the family physician, who made out the death certificate which listed coronary sclerosis as the cause of death and angina pectoris as the contributory cause, testified that these statements were based entirely on a recital of symptoms preceding the demise as described to him by Mrs. Young and that they were subject to the findings of the autopsy.

The defendant did not offer any testimony other than the proofs of death and the death certificate, as well as Dr. Wadsworth's report of his autopsy.

As to the defendant's Motion to Dismiss: Both in its amended answer and by motion before trial, defendant moved to dismiss the complaint on the grounds that it failed to disclose a recoverable cause of action and that it did not state a claim upon which relief could be granted.

■ The defendant has not waived its rights to the motion in question. Rule 12(b), Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, states "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading". In effect, by virtue of the foregoing rule, in his answer, a defendant may present every defense that he possesses. Moore's Federal Practice, vol. 1, p. 648. Further, see Pesci v. Vieser (D.N.J.1938) 1 Fed.Rules Service, Sec. 12b.31, Case No. 1, to the effect that when a motion to dismiss is reserved in the answer, defendant may move to dismiss the complaint even after the filing of his answer.

In the instant case, the motion was made after the filing of the answer but before trial. A similar motion was incorporated in the answer. Further, plaintiff does not argue waiver. It would seem clear that the motion was not waived.

■ To state a cause of action for breach of the contract in issue, plaintiff must allege (1) that death occurred while the policy was in force, (2) that such death resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, (3) that such death resulted within 90 days from the accident, (4) that the accident was evidenced by a visible contusion or wound on the exterior of the body or that an autopsy revealed internal injuries, (5) that death was not caused by suicide or from military service, etc., (6)

that no disease in any form directly or indirectly was the cause of the death, (7) that plaintiff performed her promises and all conditions precedent to the ripening of defendant's obligation to pay had occurred (enumerated), (8) defendant's failure to fulfill its promise.

■ The complaint alleges (1) that the policy was in force at the insured's death (par. 8) and (2) that Young died "directly, solely and exclusively by reason of the purely accidental event heretofore pleaded" (par. 10) which event was a "collision with another automobile" resulting in Young being "thrown about, bruised and otherwise injured" and that such accident caused an "injury to the coronary artery" (par. 9). This allegation would appear to satisfy requirement (2) noted supra. Although the exact language of the policy is not used, as the pleadings are to be interpreted liberally on a motion to dismiss, there seems to be little justification of a contrary view. The complaint alleges (3) that death resulted on the same day (pars. 9, 10); (4) that Young was bruised, which seems to be a sufficient allegation of the fact that the accident was evidenced by an external visible contusion (par. 9); (5) that the whole thing was purely accidental (par. 9) which refutes suicide, etc., and (6) that Young died "directly, *solely* and *exclusively*" by reason of the accident (par. 10) which would appear to be a sufficient allegation that disease directly or indirectly was not the cause of death. Paragraphs 11, 12 and 13 allege (7) plaintiff's performances of her promises, etc., and paragraph 14 alleges (8) defendant's breach of its promise to pay.

■ In Van Dyke v. Broadhurst, D.C., 28 F.Supp. 737, 740, Judge Watson declared: "Under the present liberal construction of the Rules of Civil Procedure, to avoid dismissal for failure to state a claim upon which relief may be had, it is necessary only to allege sufficient facts to apprize the opposing party of the nature of the claim which will be proved. Technicalities in pleading are no longer observed. One of the principal reasons for this liberal construction is that the Rules of Civil Procedure provide ample means of discovery and methods of compelling the pleader to disclose to the fullest extent the facts upon which he bases his cause of action."

In Securities and Exchange Comm. v. Timetrust, Inc., D.C., 28 F.Supp. 34, 41,

Judge St. Sure observed: "The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved. A generalized summary of the case that affords fair notice is all that is required. Pleadings shall be so construed as to do substantial justice."

Inasmuch as the present complaint, as dissected supra, appears to contain sufficient allegations to support a cause of action for breach of the insurance contract involved, and in view of the present liberal theory of the function of the pleadings evidenced by the judicial statements extracted above, it is submitted that the motion to dismiss properly was denied.

As to the proofs: Defendant cites numerous Pennsylvania and Federal decisions to support its argument that plaintiff has failed to prove that (1) the insured was in his automobile when the alleged collision occurred, (2) that the alleged bodily injury (blow on chest) was suffered in the collision and (3) that, therefore, since the collision was the only accidental means of death indicated, there is no basis in the evidence from which to find that the insured suffered death through accidental means.

The evidence with regard to the insured's receipt of the chest blow in an automobile accident shortly before his death was as follows:

(1) At approximately 12:45 a. m., April 30, 1937, the insured, in a tired but otherwise normal condition, was seen driving his automobile toward his home. (Record, pp. 5-7.)

(2) Insured arrived home about 2 a. m. in a nervous and depressed condition. (R., p. 8.)

(3) At 1:30 a. m., April 30, 1937, one Morrissey's automobile was damaged by a passing car colliding with his parked vehicle on Conshohocken Ave. east of City Line. (R. 90.) There was no witness to testify directly to the fact that Young was driving the car at the time. The scene of the accident was a five minute drive from insured's home. (R. 106.)

(4) Insured came into his wife's room at 6 a. m. complaining of his inability to sleep. At 8 a. m. he dressed, and at 9:30 a. m. he left his home. (R. 9.)

(5) At about 10 a. m., the insured drove up to Morrissey's home in a Packard automobile. (R. 97, 98.) Morrissey had seen a Packard automobile at the scene of the collision the previous night. (R. 93.) Morrissey believes it was the same Packard because (a) the insured told him so and (b) the car was damaged as if it had collided with his car. (R. 98, 99.) The insured then told Morrissey to get his car fixed. (R. 94.)

(6) Thereafter, the insured went to a branch office of the Packard Motor Co. to have his car repaired. (R. 101, 102.) The damage to the car indicated that it had struck Morrissey's. (R. 103, 104).

(7) There was no testimony as to the condition of the car at 1:45 a. m. Mrs. Young testified that she had seen the car in perfect condition the day before the accident. But it was damaged when the insured left his home on the morning of April 30. (R. 105, 106.)

(8) The insured died that morning, shortly after returning home from the Packard office and in great pain. (R. 11 to 13.)

(9) An autopsy revealed that the deceased had a severe bruise of the left hand, a mark or bruise on his chest, and a blood clot in the anterior coronary artery. (R. 126, 129.) There was expert medical opinion given that the injury allegedly received in the collision caused the coronary thrombosis which culminated in the insured's death. (R. 134 et seq., 168 et seq.) Dr. Wolferth, although previously testifying that, in his opinion, the blow caused the thrombosis, proffered another possibility, that of mental stress and anxiety incident to an accident, which might precipitate a coronary thrombosis. (R. 179, 180.)

Defendant argues that since two possible causes of death were indicated by the evidence, (a) clot caused by blow on chest or (b) clot caused by anxiety and mental strain, on the authority of the cases cited supra, the jury should not have been allowed to guess as to which actually caused the fatal thrombosis. The distinguishing factor of the evidence in the instant case, however, is that there was considerable expert medical opinion offered to the effect that death was caused by a blow on the chest. Two of the three physicians testifying as to the cause of death agreed upon this as the cause, including the medical expert who suggested, as an additional *possibility,* the factor of mental anxiety. In the cases cited by defendant, on the contrary, several theories of causation were admitted

into evidence without expert testimony being offered as to which particular theory, in all probability, was the correct one. In Stauffer v. Susquehanna Collieries Co., 1935, 116 Pa.Super. 277, 282, 176 A. 740, 742, cited by the defendant, the court observed: "Even though the evidence be considered in a light most favorable to the claimant and all inferences drawn in her favor, there are two possible causes of death with *no expression of opinion from an expert as to which is even the more probable.* * * * To hold the defendant here responsible it is necessary to resort to a mere guess or conjecture as to the cause of death. This is not permitted." (Italics supplied.) See also Bruggeman v. York, 1916, 254 Pa. 430, 435, 98 A. 970, 971.

Another objection raised by defendant is that in order to find that the insured received a chest blow in the automobile collision, it is necessary to draw inference from inference.

There is no general doctrine that an inference may not be drawn from another inference. In Neely v. Provident Life & Accident Insurance Co., 1936, 322 Pa. 417, 426, 185 A. 784, 789, Justice Maxey declared:

"With the distinction clearly in mind between presumptions and inferences, it is obvious that no presumption can be founded on a presumption; and it is equally obvious that inferences may be founded on inferences, as they are in the investigations carried on by scientific men and in the everyday affairs of life. As to the proposition that inferences cannot be based on inferences, Wigmore on Evidence (2d Ed.) vol. 1, § 41, says: 'There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed deceased. * * * In these and innumerable daily instances we build up inference upon inference, and yet no court ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed on such data. The judicial utterances that sanction the fallacious and impractical limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.' * * *

"When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by life process until they arrive at the ultimate conclusion on the issue trying."

In accord, see Del Gazio Distributing Corp. v. Gallagher, 1937, 127 Pa.Super. 53, 61, 192 A. 144, 148, and Aurand v. Universal Carloading & Distributing Co., 1938, 131 Pa.Super. 502, 507, 200 A. 285, 287.

As applied to the instant case, the issue of whether the insured personally was in the collision seems to be so free from conjecture in view of the preponderance of circumstantial evidence that it may be regarded as a fact proven.

Other strong decisions repudiating the dogma against drawing inference from inference are: Spencer Light, Heat & Power Co. v. Board of Com'rs of Owen County, 1920, 74 Ind.App. 199, 128 N.E. 700 (declaring the limitation is fallacious and impractical); Paiva v. California Door Co., 1926, 75 Cal.App. 323, 242 P. 887 (observing that the rule would restrict too narrowly the value of circumstantial evidence); Sliwowski v. New York, N. H. & H. R. Co., 1920, 94 Conn. 303, 310, 108 A. 805, 807 ("There is in fact no rule of law that forbids the resting of one inference upon facts whose determination is the result of other inferences. * * * It is but a rule of caution; its true function is to guide the court in the exercise of its judgment in determining whether or not evidence offered is too remote"); Welsch v. Charles Frusch Light & Power Co., 1923, 197 Iowa 1012, 1021, 193 N.W. 427, 431 ("If we exclude all inferences which depend in any degree upon other inferences from established or admitted fact, very little human testimony would ever reach the ear of court or jury"); L'Esperance v. Sherburne, 1931, 85 N.H. 103, 155 A. 203 (repudiating previous decisions to the contrary).

Finally, to settle the question as far as the rule of the Third Circuit is concerned,[1] it is to be noted that in the previous appeal of the instant case in Aetna Life Ins. Co.

---

[1] Needless to mention, since the repeal of the Conformity Act and the establishment of the new Federal Rules of Procedure, the older U. S. Supreme Court cases, cited supra, have no binding effect today on issues of procedural law.

v. Young, 3 Cir., 103 F.2d 839, 842, Judge Clark, speaking for the Circuit Court of Appeals, abruptly declared that the rule against drawing inference from inference was out of date and cited with approval the decision of Neely v. Provident Life & Accident Insurance Co., supra.

■ Lastly, it is objected that even were the fact established that the insured received the injury in the collision in question, there is no evidence that the collision was accidental—it may have been intentional. In a number of Federal cases arising outside of this circuit, and decided prior to the new rules, the following presumption has been applied: "Death having been caused through external and violent means, it will be presumed that the death was caused by accidental means." Baciocco v. Prudential Ins. Co., D.C., N.D.Cal., 1927, 22 F.2d 700, 702, affirmed, 9 Cir., 1929, 29 F.2d 966, certiorari denied, 1929, 279 U.S. 854, 49 S.Ct. 350, 73 L.Ed. 996, and cases cited therein. An examination of the Federal Digest reveals no decision on point in this circuit. The Pennsylvania court has denied the existence of such a presumption. Watkins v. Prudential Ins. Co., 1934, 315 Pa. 497, 173 A. 644, 95 A.L.R. 869. It would seem that, from the circumstances testified to, at least it was for the jury to draw the inference of whether or not the collision was accidental. Inasmuch as evidence of the mental state of a particular person at a particular time rarely is indicated in an affirmative objective manner and in view of the general probability against an intentional collision, it cannot be said the evidence presented in this case was insufficient to permit the drawing of the inference in question.

Defendant also argues that the language of the insurance policy upon which double liability is predicated cannot be construed to mean other than that which it says. It is contended that there was no testimony that the chest blow *"directly and independently of all other causes"* resulted in death. On the other hand, defendant's position is that the testimony demonstrates that an existing heart disease was the all important cause of death.

■ Whatever may be the intrinsic value of defendant's conception of the scope of liability under the double indemnity provision, the Pennsylvania court has ruled on the question and its decision is a binding precedent in this case. In a previous appeal of this case, Judge Clark, speaking for the Circuit Court of Appeals, found the Pennsylvania decisions inconclusive on the point. Aetna Life Ins. Co. v. Young, 3 Cir., 1939, 103 F.2d 839, 841. The case of Kelly v. Prudential Life Ins. Co., 1939, 334 Pa. 143, 6 A.2d 55, 58, had been decided a week previously but, unfortunately, was not called to the attention of the Circuit Court of Appeals. In the Kelly case, Justice Maxey, in ruling on a similar insurance provision, upheld the following charge of the trial court: "The law is that if a disease, while existing, be but a condition and the accident the moving, sole and proximate cause of the death, the exception in the policy will not relieve the insurer for death so caused. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease and low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury. * * *"

The court then quoted with approval from Kelley v. Pittsburgh Casualty Co., 1917, 256 Pa. 1, 7, 100 A. 494, 495, as follows: " 'The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause.' * * * The phrase 'resulting directly, independently, and exclusively in death' refers to the efficient, or, as some courts speak of it, the predominant, cause of death at the time it occurs. In other words, it means the proximate cause. * * We are of the opinion that the language of this policy does not mean that there shall be no liability in case death results from the aggravation of a pre-existing disease."

Mr. Justice Maxey concluded, with respect to the facts of the Kelly case, 334 Pa. at page 151, 6 A.2d at page 59: "It is clear that if the physical condition of the insured is merely weakened or his resistance to disease lowered by a pre-existing ailment or disease incident to advancing age, which creates a bodily condition of a passive nature not alone sufficient to cause death, this fact will not prevent recovery for death resulting from accidental means under an insurance policy providing indemnity therefor, even though death re-

sulting indirectly from bodily or mental infirmity or disease is excluded as a risk, provided the accident sets in progress the chain of events leading directly to death."

For a collection of decisions on the instant question as related to cases involving arteriosclerosis, see annotations in 3 A.L.R. 1304 and 82 A.L.R. 1411. For a comparison of the views of the various state courts on the general question, see Notes, 25 Mich.L.Rev., 467 and 803; 26 Ill.L.Rev. 344; 19 Minn.L.Rev. 244. Cf. Scanlan v. Metropolitan Life Ins. Co., 7 Cir., 1937, 93 F.2d 942.

■ Turning to the evidence in the instant case, Dr. Wadsworth, the physician who performed the autopsy, testified that at the time of the insured's death his heart was a trifle oversized and the anterior coronary artery was somewhat reduced in size, and that it contained a collection of calcareous ·deposit, limy deposit, in the form of spicules. (R. 126.) There was a mark on the middle or to the right side of the middle of the chest. (Id.) There was no indication of an active disease process going on. (R. 127.) There was no indication of any serious lesion of the other organs which could be considered as a complication of the cause of death. (R. 128.) The indications were that the insured died as a result of a clot formed at this particular part of the coronary artery due probably to a sudden blow on the chest, or the meeting of the body with an obstacle, which would fracture the spicules, thus causing a puncture at the point the clot in question formed. (R. 129.) On cross examination, Dr. Wadsworth reiterated that there was no active disease process at the time of the injury (R. 140), although there was some indication of a previous inflammation or disease producing the condition of the heart at the time of death. (R. 142.) The heart had established a compensatory circulation and therefore was not suffering. (R. 142, 143.) Dr. Wadsworth refused to commit himself on the question of whether the blow received by the insured would have caused death in a normal heart, inasmuch as he did not know how much of a blow the deceased had received. (R. 146.) He stated that, in his opinion, the man died of the clot, "an injury on top of a pre-existing condition—not a disease in the sense of the ordinary term." (R. 148–150.)

Dr. Wolferth, the heart specialist, gave expert testimony as follows: He believed that the accident was the cause of Young's death because of (1) the time relation between the accident and death, (2) the finding of a chest bruise indicating receipt of injury at the time of the accident, (3) the symptoms described prior to death, and (4) Dr. Wadsworth's findings in the anterior coronary artery. (R. 168.) He also denied that the heart condition discovered by the autopsy could be called, in a scientific sense, a disease and suggested that such conditions often are found in men at the age of sixty. (R. 170.) On cross-examination, Dr. Wolferth refused to concede that the heart condition found constituted a disease from a medical viewpoint. (R. 171.) Before concluding, Dr. Wolferth offered another possibility as to the cause of death that could not be ruled out, namely, the factor of mental stress and anxiety incident to an accident that might precipitate a coronary thrombosis. (R. 179, 180.)

In the physician's statement in the proofs of death submitted to the insurance company, Dr. Blackburn, the insured's personal physician, noted coronary sclerosis as the cause of death. (R. 189.)[2] On the witness stand, Dr. Blackburn defined this as a hardening of the arteries that supply the heart with blood. (R. 120.) He remarked, in a general way, that such condition was a heart disease. (Id.) However, he was not certain of how long the insured had had this condition—perhaps a few years. (R. 121.) The report on the autopsy, filed by Dr. Wadsworth, apparently failed to mention a finding of a bruise on the deceased's chest, the existence of which was testified to by Dr. Wadsworth. However, the conclusion reached in the aforesaid report was that an impact or blow on the front of the chest caused the clot resulting in death. (R. 199.) At the trial, Dr. Wadsworth declared, under cross-examination, that his original notes showed that there was evidence of a bruise on the chest and that if mention of such fact was omitted from the summarized report, it was just an oversight. (R. 138.)

The court charged the jury in accordance with Kelly v. Prudential Life Insurance Co., supra. It charged further that if the jury believed Dr. Wadsworth's and Dr.

[2] The same statement was made in the Certificate of Death filed by Dr. Blackburn with the Bureau of Vital Statistics. (R. 195)

Wolferth's testimony that the accident was the cause of death, plaintiff would be entitled to recover. (R. 219.) However, if among other things the jury did not believe Dr. Wadsworth's or Dr. Wolferth's testimony in this regard, it was to find for defendant. (R. 219, 220.) The court also cautioned the jury that if it found that mental anxiety caused the thrombosis, there could be no recovery under the policy. (R. 215.)

There was no affirmative charge that if the jury found that the insured died of an active heart disease, as distinguished from an injury aggravating and rendering fatal a pre-existing infirmity, there could be no recovery. However, the testimony discloses that the court would not have been justified in permitting an affirmative finding to this effect. Both Dr. Wadsworth and Dr. Wolferth testified that there was no active disease process. While Dr. Blackburn vaguely termed coronary sclerosis a disease, he did not indicate whether he meant by this an active process at the time of death or a pre-existing infirmity. Moreover, his statements in the proofs of death · and the certificate of death were based not upon a personal examination of the insured but from the symptoms described to him by Mrs. Young. (R. 123.) The report was noted to be subject to the autopsy findings. (R. 124.) As already indicated, Dr. Wadsworth, who performed the autopsy, denied the existence of a heart disease at the time of the injury and death. On the whole, the court made it clear to the jury that in order to find for plaintiff, it must be found that the insured died as a result of an accidental injury through external means and that, in this regard, it must find that the heart condition involved was merely a pre-existing infirmity which, although rendering fatal a blow that otherwise might not have been so, did not become a proximate cause of death under the Pennsylvania rule. The court alluded to the medical testimony that there was no active disease process (R. 213, 220) and specifically charged that this testimony must be believed by the jury before recovery could be given. (R. 219, 220).

In rendering its verdict for the plaintiff, the jury therefore evidently believed the testimony of Dr. Wadsworth and Dr. Wolferth and found that death was caused by. an accidental external injury. Under the decisions noted supra, the injury was the proximate cause of death within the meaning of the double indemnity provision of the insurance policy. In sum, defendant's exception on this account cannot be sustained.

■ Defendant's final argument is that in the proofs of death, Dr. Blackburn stated that the insured died of coronary sclerosis, and later, at the trial, he termed this a "heart disease". In its argument, defendant cites indiscriminately cases involving proofs of death submitted by a claimant and those made out by a physician. In the instant case, the claimant's statement was that the cause of death was "injury to heart following automobile accident". Therefore, any advantage that defendant seeks to draw from the ·proofs of death must be predicated upon the statements made by the physician. Also, there are the identical statements by Dr. Blackburn in the Certificate of Death.

Defendant concedes that the foregoing documents were not conclusive upon plaintiff and that the statements made therein might be explained or contradicted at the trial. Undoubtedly, this is the general rule. See Aetna Life Ins. Co. v. Ward, 1891, 140 U.S. 76, 11 S.Ct. 720, 35 L.Ed. 371; Jensen v. Continental Life Ins. Co., 3 Cir., 1928, 28 F.2d 545; Evans v. Penn Mutual Life Ins. Co., 1936, 322 Pa. 547, 186 A. 133; Holleran v. Life Assurance Co. of America, 1902, 18 Pa.Super. 573. See also an excellent annotation in point in 93 A.L.R. 1342. Defendant's position is that plaintiff's evidence confirmed the alleged representation of disease as the cause of death appearing in the documents heretofore mentioned. From what already has been stated it is evident that defendant's argument is not merely untenable but totally specious. All of the expert medical testimony, with the exception of Dr. Blackburn's general and unexplained reference to coronary sclerosis as a heart disease, contradicted any implication of the statements in the above documents that the sole or concurring cause of death was that of heart disease. On the contrary, they reiterated continually that the insured suffered from no active disease process. Dr. Blackburn's report itself stated that it was subject to the findings of the autopsy made by Dr. Wadsworth who specifically denied the conclusion sought to be established by the defendant.

The foregoing discussion was, primarily, a consideration of the arguments set forth in the brief of counsel for defendant. Upon examination of defendant's exceptions in support of its motion for a new trial, etc., I find nothing in the exceptions 1 to 11, inclusive, which would require additional comment. Exceptions 12, 13 and 14 apparently raise the objection that the charge of the court assumed the insured was in the car at the time of the collision. Exception 18 similarly is related to this question. However, upon the suggestion of Mr. Reilly, counsel for defendant, the record indicates that the court corrected this misimpression and said that it was for the jury to determine whether Young was in the car, whether there was an accident or physical injury therefrom, and so forth. (R. 228.) Exception 15 is an objection to the statement of the law made in the court's charge and this already has been discussed. Exception 16 is to the effect that the court failed to comment that Dr. Blackburn stated that his declarations in the proofs of death, etc., had been proven by the autopsy. An examination of the record compels a denial that Dr. Blackburn so testified. In response to a request by Mr. Comber, attorney for plaintiff, to decipher certain writing on the documents, Dr. Blackburn answered that it said: "This report is supported—is subject to autopsy findings".

Exception 19 raises the objection that the court failed to charge the jury that plaintiff was estopped by the declarations in the proofs of death submitted. Again, there is little substance to the exception taken. As already indicated, no such estoppel is imposed by law. Further, the statements of Dr. Blackburn in the documents in question were merely that insured died of coronary sclerosis which Dr. Wadsworth and Dr. Wolferth denied was an active disease process. The court charged the jury to consider these documents together with all of the other evidence. It would seem clear that, on the contrary, a charge of estoppel, as requested by defendant, most certainly would have constituted reversible error. Finally, exception 20 is an allegation that the charge permitted a verdict for plaintiff under several different lines of proof from the testimony. The fallacies proffered by defendant, in this connection, have been discussed previously and, therefore, need no further restatement.

On the whole, the conclusion reached is that the exceptions taken by the defendant fail to indicate any prejudicial error. The defendant's motions to set aside the verdict and for a new trial are accordingly denied, with leave to the plaintiff to enter judgment on the verdict, with interest and costs.

