In Re: Est. of Vincent Szymanski, Deceased.

Argued April 28, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Warren H. Van Kirk,* and with him *Patrick J. Corr* and *H. L. Abrams,* for appellant.—Where the premiums on the policy of life insurance are paid by the beneficiary he must have an insurable interest: Young v. Hipple, 273 Pa. 439; Life Insurance Co. v. Brown, No. 1, 270 Pa. 264; Taussig v. Security Company, 231 Pa. 16.

*Edward J. Gannon* of *Hazlett, Gannon & Walter,* for appellee.—Everyone has an unlimited insurable interest in his own life, and he may take out a policy of insurance on his own life and make it payable to whom he will, and it is not necessary that the beneficiary should have an insurable interest: Haberfeld v. Mayer, 256 Pa. 151; Steen v. Lowry, 85 Pa. Superior Ct. 365.

OPINION BY TREXLER, P. J.:

Matthew Makowski died July 25, 1927. During the years of 1924 and 1925 he took out two policies with

the Metropolitan Life Insurance Company. Premiums were paid weekly. No beneficiary was named in the policies, but they provided upon the death of the insured that payment should be made to his executor or administrator, unless payment be made under provisions of the succeeding paragraph, which is in part: "The company may make any payment or grant any nonforfeiture privilege to the insured, husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his or her burial." There was a provision that any assignment of the policy should be void. We quote from the opinion of the lower court: "Decedent became in arrears in his payments of premiums and was unable to continue them. He requested his daughter to take over the policies, but she refused. He then took it up with his sister, and also his niece, but neither of them was able to undertake to carry on his payments. In March or April, 1925, about two or three weeks before the policies would lapse, he persuaded claimant to assume the overdue and future payments and told him he could have the proceeds at his death, and turned over to him the policies and the receipt books in which the premium payments were entered. The overdue payments, amounting to $8.80, were paid by claimant and he made the weekly payments of $1.10 from that time until decedent's death, amounting in all to $137.50.

"At the time the policies were turned over to claimant decedent executed some paper which Mr. Sokolow, the agent for the company, who wrote the policies and collected some of the premiums and is not now in the employ of the company, said was a form for change of beneficiary in favor of claimant. He took this form and intended to send it to the office of the company, but it became mislaid and was never sent in. His

testimony as to the arrangement between decedent and claimant was corroborated by a sister of decedent, and decedent told his niece that he was very glad he had given the policies to claimant. Claimant himself testified that at the time his uncle turned over the policies and receipt book to him he signed a beneficiary certificate of some kind. The policies and receipt books were in the possession of claimant when decedent died."

Upon an audit of the account filed in the estate of the decedent, the claim was resisted in the lower court on the theory that any attempt to name as beneficiary his nephew, who paid premiums on the policies thereafter until decedent's death, in the absence of any proof of love and affection of decedent for the nephew, was illegal, he having no insurable interest, and that, the whole transaction was void, and that the proceeds should go to the estate of the decedent. The company did not resist payment, but paid the amount in question to the representatives of the decedent, all parties in interest agreeing that the disposal of the proceeds of the policies be referred to the court at the audit.

The Act of May 17, 1921, P. L. 682, known as Insurance Code, Article 4, paragraph 412, provides: "Any person may insure his own life for the benefit of any person, co-partnership, association, or corporation, but no person shall cause to be insured the life of another, unless the beneficiary named in such policy or agreement of life insurance, whether himself or a third person, has an insurable interest in the life of the insured. The term 'insurable interest' is defined as meaning, in the case of persons related by blood or law, an interest engendered by love and affection, and in the case of other persons, a lawful economic interest in having the life of the insured continue, as distinguished from an interest which would arise only by the death of the insured." The policy, in question, was without question a legal contract, when it was entered into. The prohibition of the above paragraph, which

seems to be relied upon by the appellant, is to "cause to be insured the life of another" and naming a beneficiary, who has no insurable interest in the life of the insured. This has no relation to the question before us. The insured at the time the policies were taken out could have named his nephew as beneficiary, and it would have been perfectly legal. Is the situation changed by the fact that when the insured was unable to pay the premiums that on his own motion his nephew was named as beneficiary, and thereafter paid the premiums so as to keep the policies alive? We do not find a single case cited in appellant's argument, which supports the conclusion that such a transaction is illegal. A man need not have any insurable interest in another's life in order to be named by the insured as beneficiary, and the policy being legal in its start, and the changing of a beneficiary being also proper, does the payment of the succeeding premiums by the party named deprive him of the benefits which, if the insured, or some one else had paid the premiums, would have enurred to his benefit? It is unnecessary to prove an insurable interest in the life assured, at the maturity of the policy, if it was valid at its inception: Montgomery's Estate, 299 Pa. 452, 149 A. 705. In 32 C. J. 1110, the law is stated as follows: "In life insurance it is sufficient if an insurable interest exists at the inception of the contract so that the policy is not invalidated by a subsequent termination of that interest or an assignment to a person without insurable interest provided the assignment is made in good faith and not as a mere cloak or cover for the procuring of insurance by one without insurable interest." There is no reason why this statement should not apply where a change of beneficiary is made, and a person not having an insurable interest is designated.

The decree of the lower court is affirmed. Appellant to pay the costs.