REILLY *v.* HENRY.

4-3003

Opinion delivered May 1, 1933.

*Utley & Hammock,* for appellant.

*Harvey G. Combs* and *John F. Park,* for appellee.

BUTLER, J. The plaintiff, appellant here, brought suit to recover from the property of her divorced husband, Robert B. Henry, deceased, alimony and costs formerly decreed to her in the Pulaski Chancery Court, alleging that the same was under the control of the defendants, Mrs. Zada Henry and J. T. Henry, mother and father of the deceased, and also in the action sought to recover the proceeds of a certain life insurance policy issued by the Central States Life Insurance Company upon the life of the said Robert B. Henry, in which policy the plaintiff was named as beneficiary at the time of its issuance. Plaintiff alleged that she was the rightful beneficiary by virtue of a contract fully performed with her deceased husband; that the defendant, Mrs. Zada Henry, had been fraudulently substituted as beneficiary. She prayed for an injunction against the insurance company restraining payment of the proceeds of the said policy to the substituted beneficiary and for judgment on said policy as the rightful beneficiary. Plaintiff also sought to recover a one-third interest as a partner in the mercantile business of J. T. and W. T. Henry.

The defendants, the Henrys, answered, denying all the material allegations of the complaint, and the defendant, Central States Life Insurance Company, filed a separate answer admitting liability on the policy and tendering its check payable to the chancery clerk in the sum of $1,985.68 in full discharge of the policy and prayed for an order requiring Mrs. Zada Henry to surrender the policy to the clerk of the court and to discharge the defendant life insurance company. This tender was approved by the court, and Mrs. Zada Henry was required to surrender the original policy into the registry of the court to be held with the proceeds thereof pending determination as to the rightful beneficiary.

Testimony was adduced at the trial on behalf of the plaintiff and the defendants, and the court entered a decree denying the prayer of the first paragraph of the complaint for reformation of the policy that plaintiff be named as beneficiary therein. The court decreed that the prayer of the complaint for a one-third interest in the mercantile business of the Henrys be denied, and found that the plaintiff was entitled to the sum of $310 before then adjudged to her as alimony and rendered judgment against the defendants, Henrys, for said sum, and that said judgment be a lien upon the store with all assets therein. From this part of the decree no appeal has been prosecuted by the defendants, but plaintiff has appealed from that part of the decree denying her right to recover the proceeds of the policy and an interest as a partner in the mercantile business.

We first dispose of the question of the partnership as the issue involved is merely one of fact. The storehouse was built in the summer of 1926, and a stock of merchandise was installed therein and business begun sometime in the fall of that year. Plaintiff drew a check on her account in a local bank for the sum of $750 which it is admitted was used in the construction of the store building, and which plaintiff claims was for the purchase of a one-third interest in the business thereafter to be conducted therein. There was evidence tending to support this contention, likewise evidence to the contrary;

all of which we have carefully considered and are unable to say that the conclusion reached by the trial court on this question is against the preponderance of the testimony. The decree in this respect will therefore be affirmed.

Regarding the contention of plaintiff as to the ownership of the proceeds of the insurance policy, a more difficult question is presented. The policy was issued January 2, 1926, on the life of Robert B. Henry, and plaintiff, then his wife, was named as beneficiary therein. The policy, however, provided for a change of beneficiary by the insured under the title "Beneficiary," which is as follows: "The insured may designate one or more beneficiaries if none be named herein, and may designate one or more contingent beneficiaries whose interest shall be as expressed in or by indorsement of the company on this policy and may change any beneficiary or contingent beneficiary at any time while this policy is in force, all by written notice to the company at the home office, and subject to any assignment hereof. Such designation or change shall take effect only upon approval and indorsement of the same on the policy by the company."

Counsel for the appellee states the contention of the appellant as follows: "Appellant earnestly insists that she is the owner of insurance policy No. 73243 by reason of the fact that this poli'y was taken out by her husband and delivered to her with the understanding or agreement that she was to pay all premiums on said policy, and that thereby it became her property. This contention would be sound and be worthy of merit if it were not for the terms of the policy itself."

Plaintiff and Robert B. Henry were married in October, 1923. The insurance policy was issued in January, 1926. In June, 1932, plaintiff brought suit for a divorce from Robert B. Henry and obtained a decree of divorce on July 7 of that year. On August 7 following Robert B. Henry was fatally injured and died within a few days. The evidence, which is undisputed, is to the effect that the policy was taken out and given to the plaintiff by the insured with the understanding that she was to pay

all the premiums. Plaintiff remained in actual possession of the policy until about May, 1932, when she delivered it with other of her papers to her father-in-law, J. T. Henry, with the request that he put it in his safety deposit box for safe keeping. The policy remained in the deposit box until after plaintiff instituted her action for divorce when her father-in-law delivered it to her husband without her knowledge or consent, and he obtained a change in the name of the beneficiary to Mrs. Zada Henry, also without her knowledge. This was accomplished just a few days before the rendition of the decree of divorce. The day after the funeral of Robert B. Henry, plaintiff went to the office of the insurance company in Little Rock for the purpose of making proofs required by the policy. She was then informed for the first time that her father-in-law had surrendered the policy to Robert B. Henry, and that he had obtained a change in the name of the beneficiary.

It is admitted that plaintiff paid the first premium, all intervening premiums, and the last premium. These were payable quarterly, and each was for the sum of $14.32. There were twenty-six premiums which plaintiff paid. It is her contention that the premiums were paid in accordance with the agreement of her husband when the policy was first procured; that they were paid out of her own funds, and that the policy was at all times her property of which she had possession at all times. While admitting that the plaintiff paid the premiums, it is the contention of the defendants that they were paid with her husband's money, and their counsel insist that this fact is established by plaintiff's own testimony. To support this view, they present certain excerpts from plaintiff's testimony which, if taken without reference to her testimony as a whole, would tend to show that during the time she was making payments of the premiums she was not working, had no money of her own, that what money she had was earned by her husband, and all payments of premiums were made with money which he had given her. These excerpts, taken from the body of plaintiff's testimony, would give support to the contention of counsel. It is clear, however, when we consider

the entire evidence, not only of the plaintiff but of the other witnesses, that she was referring to the payment of premiums from the time of the issuance of the policy until the time the Henry mercantile business commenced. During this interval she was not working except as a housewife, and the money she received was earned by her husband and was given to her as allowances for household and personal expenses, and what she could save from these allowances was her own to do with as she pleased, and out of these savings she paid the insurance premiums. Her savings account at the bank was introduced and showed during these times she had been able to save substantial sums.

The evidence is undisputed that beginning in October, 1926, plaintiff worked continuously in the mercantile establishment until the latter part of May or the first of June, 1932, when she left her husband and brought suit for divorce. A part of this time her husband was also working in the store, but for how long and what else he did the record does not disclose. Plaintiff admits in her testimony that, after she began working in the store, when the premiums would fall due she would get the money at the store, either from the cash drawer or ask some one in the store for it. This, however, does not indicate that it was not her own money for she was rendering valuable services during all that time, nor does it support the contention that "every premium paid on the life insurance policy of Robert B. Henry was paid with money earned by him and furnished to her for the express purpose of keeping these premiums alive, and that later when appellant and her husband came out to the home of the appellees to work in the store on Prospect Avenue that all of said premiums were paid with money furnished appellant from the store by the appellees." From the testimony it is evident that the store was conducted as a family enterprise, the father, one son, W. T. Henry, and the plaintiff working all the time, and plaintiff's husband working part of the time. For a little more than the first year plaintiff was paid no salary, for about two years she was paid a small salary of $5 per week, and for the remainder of the time she

again worked without salary. During this last period the bank account discloses she was able to accumulate very little.

J. T. Henry, the father, in his testimony intimates that plaintiff's personal bills were paid out of the store in excess of the value of her services, but it is significant that the items of such expenses and amounts of money were not given. Mr. Henry contented himself with the general statement: "I paid most of Miss Reilly's bills, or she was given money for same by me or the boys. She was privileged to take money from the cash drawer and ticket same to herself. I reckon she paid her house rent and other bills herself and with money she took from the store."

Relating to the manner in which the premiums were paid and the source from which the money was derived, plaintiff testified: "The insured, Robert B. Henry, did not furnish me the money to pay the premiums, although some of it may have been paid out of money he furnished me for household and living expense." This testimony is not disputed except by insinuation which we think is not warranted from the testimony.

It is our conclusion that the preponderance of the testimony establishes these facts: first, that the policy was procured with an understanding between the plaintiff and her then husband that she was to pay the premiums; that with this understanding, when the policy was obtained, it was delivered to the plaintiff and kept by her until surreptitiously taken from the lock box, and that during all of the time she complied with her agreement by paying the quarterly premiums out of her earnings or with money she saved out of her allowances given her by her husband which was her own to do with as she pleased.

The rule is well established that where the policy provides for a change of beneficiary by the insured, the beneficiary first named has no vested interest as in ordinary policies, but this rule is not absolute and indefeasible, as contended by the appellees. Circumstances may arise, either in the procurement or during the life of the policy, such as would establish an equitable in-

terest in the proceeds thereof. There are many cases which recognize this exception to the rule, and we have found none to deny it where the contest for the proceeds is between rival claimants and which do not involve the rights of the insurer arising out of the contract as written.

The principle just stated is recognized by the Supreme Court of Vermont in the case of *Modern Woodmen of America* v. *Headle*, 88 Vt. 37, 90 Atl. 893, reported at page 580, L. R. A. 1915A, and many cases are there cited supporting it.

In *Cronan* v. *Metro. Life Ins. Co.*, Supreme Court of Rhode Island, reported at page 618, 147 Atl., 50 R. I. 323, it is said: ''The law is well settled that a beneficiary who pays premiums or loans money upon the security of the policy acquires in the policy a vested right which will be protected in equity against one who thereafter, without valuable consideration, becomes the substituted beneficiary. Although the policy contains a clause to the effect that no assignment of the policy will be recognized unless consented to by the insurance company, a beneficiary who acquires vested rights is only required to notify the insurance company of the fact before payment is made to another person.''

In the case of *Shoudy* v. *Shoudy*, 55 Cal. App., p. 344, 203 Pac. 433, the husband had procured a policy which provided that he might change the beneficiary, and at the time the policy was written he named his wife as the beneficiary. Afterward, in contemplation of divorce, he agreed to maintain the policy for his wife as long as she remained single. The divorce was obtained, and shortly afterward the beneficiary was changed, and one whom the insured had married was substituted as beneficiary in lieu of the divorced wife. The substituted beneficiary, just before her marriage to the insured, had loaned him a sum of money equal to the policy, and after the marriage her husband informed her that he had protected her with the life insurance policy. She, however, did not become possessed of the policy and never saw it. Neither did she or the first-named beneficiary know of the change until after the death of the

insured. In a contest which arose between the first and the substituted beneficiaries, it was the latter's contention that the judgment of divorce determined all the rights of the first-named beneficiary, and that her interest in the policy at no time was more than a mere expectancy subject to defeat at any time by the act of the insured under the power given by the terms of the contract of insurance. The court disagreed with both contentions, and as to the last, while holding that when the policy was first taken out the beneficiary named had no vested or equitable rights therein which the insured could not have ended at will by change of beneficiary, yet when he agreed for a consideration to keep the policy in being for the beneficiary as long as she remained single, and "when this offer was accepted by her, the quality of her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of the insured in changing the name of the beneficiary."

In *McDonald* v. *McDonald,* a case from the Alabama Supreme Court, reported in 212 Ala. 137, 102 So. 38, 36 A. L. R. 761, in referring to the contention that the face of the policy at the death of the insured with respect to the beneficiary where the same had been changed under the power in the policy, must be taken as conclusive, the court recognized that some courts support the contention and made the following declaration: "But we think it should be considered at least that equities may arise in favor of the named beneficiary which would deny such right, as, for example, the insured may for valuable consideration estop himself from changing his designation of the beneficiary."

In the case of *M'Glynn* v. *Curry,* 82 App. Div. 431, 81 N. Y. S. 855, the facts were that the insured, on obtaining a life insurance policy in which her niece was designated as beneficiary, delivered the same to said niece, using language from which a gift might be inferred. Afterward the policy, at the mutual request of the insured and the beneficiary, was delivered to an uncle of both for

safe keeping, and was deposited by him in a safe in his house where it remained for a time when it was sent by the mother of the beneficiary with other papers to the insured without directions from the beneficiary or any one representing her, or any expressed or implied intent of the beneficiary, to part with the ownership. The insured, after obtaining possession of the policy, attempted to substitute another for the beneficiary first named under the power contained in the policy. Upon the death of the insured, in an action between the first and last named beneficiaries, the insurer, as in the case at bar, appeared not as a contestant but for the purpose of having determined which one of the claimants was entitled to the proceeds of the policy. In deciding in favor of the beneficiary first named, the court held that from the circumstances as disclosed by the testimony it was fairly to be inferred that, when the insured delivered the policy to the beneficiary, it was her intention to convey to said beneficiary the policy—that the unqualified delivery was effectual for that purpose—and the rights thus fixed could not afterwards be divested by the act of the insured: "Each installment is, in fact, part consideration of the entire insurance for life (*New York Life Ins. Co.* v. *Statham,* 93 U. S. 24, 30, 23 L. Ed. 789); and when the insured, in the case at bar, made her initial payment and delivered the policy, with intent to convey ownership in the plaintiff, there was a value involved, of which the plaintiff could not be divested by any subsequent act on the part of the insured without her consent. The plaintiff, by reason of the consummated gift, had a property right in the whole contract; and, while this might be forfeited by a failure on the part of the assured or the plaintiff to make the quarterly payments provided for in the policy, the insured had parted with the right to transfer this policy or its benefits to any other person than the beneficiary named, and her letter requesting the company to insert in the policy the name of a new beneficiary could not operate to vest in the defendant (the substituted beneficiary) any right to the money which is now conceded to be due under the policy." Followed in

*Jacobs* v. *Strumwasser,* 84 Misc. 28, 145 N. Y. S. 916, and cited in *Continental Life Ins. Co.* v. *Sailor,* 47 Fed. (2d) 911, which announces the same rule.

As suggested by the Alabama court there are some cases which would appear to hold a view contrary to the principles announced in the cases above cited and quoted from; but an examination of those cases, in so far as our research has extended, discloses that these were contests between the beneficiary first named and the insurer, and to sustain the contention of the first beneficiary loss would fall upon the insurer, and it is for that reason that contracts, either express or implied, between the insured and the beneficiary which would prevent the former from exercising the privilege of changing the beneficiary as provided in the policy are not recognized. "The remedy to enforce any contract of that kind is not to be applied in a suit on the policy between the original beneficiary and the company." *Royal Union, etc.* v. *Lloyd,* 254 Fed. 407, 135 C. C. A. 627.

It must be remembered that the insurer in the instant case appears, not as a contestant, but merely for the purpose of determining the rights of the respective claimants to the proceeds of the policy, which, when ascertained, it is ready to pay and has, indeed, already paid the proceeds into the court. As between the claimants, the preponderance of the evidence establishes a case for the beneficiary first named stronger than in the cases cited which deny to the insured the right to exercise the privilege of changing the beneficiary allowed by the terms of the policy. All that the insured ever did was to make application for the policy and the agreement between him and his wife, the delivery to and the subsequent possession of the policy by her, and the payments by her of the premiums, are facts which, if not sufficient to warrant the conclusion that she was at all times the legal owner of the policy, did create such equities in her favor as in good conscience would prevent the exercise of the power of change contained in the policy and render ineffectual any attempt of the insured to divest her interest therein.

It follows from the views expressed that the decree of the trial court must be, and it is, hereby modified and judgment is entered here in favor of the appellant (plaintiff in the court below) for the proceeds of the policy, and its custodian is directed to pay the same over to her on demand. As thus modified, the decree is affirmed.