## MASSACHUSETTS LINOTYPING CORPORATION *vs.* JULIA EVELYN FIELDING.

Suffolk. March 2, 3, 1942. — August 21, 1942.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Insurance,* Life: equitable charge upon proceeds, change of beneficiary, policy payable to married woman. *Lien,* Equitable. *Trust,* Constructive. *Contract,* Validity, Respecting life insurance policy. *Wills, Statute of. Married Woman. Equity Pleading and Practice,* Appeal, Rehearing.

An agreement between a close corporation and its principal stockholder, that it should pay the premiums on a policy of insurance on his life and he should make it the beneficiary of the policy and continue it as such until his death, would, if performed by the corporation, give it on his death an equitable interest in the proceeds of the policy enforceable as against one substituted as beneficiary in place of it after the making of the agreement, unless the substituted beneficiary was a purchaser for value without notice or otherwise had a superior equity.

A contract which would give one of the parties an equitable interest in the proceeds of a life insurance policy of the other party at his death would not violate the statute of wills.

Section 126 of G. L. (Ter. Ed.) c. 175 must be construed in connection with § 125.

The holder of an equitable interest in the proceeds of a life insurance policy, acquired by contract with the insured before substitution of his wife as beneficiary of the policy in violation of such contract, was not precluded by G. L. (Ter. Ed.) c. 175, § 126, from enforcing his rights as against her.

Upon appeal, with a report of the evidence, from a final decree dismissing the bill in a suit in equity, the decree was reversed and the case was remanded for hearing anew where it appeared that the trial judge had lost sight of and had made no finding upon a substantial issue presented by the pleadings and the evidence and had attributed undue weight to an inconclusive piece of evidence.

BILL IN EQUITY, filed in the Superior Court on January 17, 1941.

After hearing by *O'Connell,* J., a final decree dismissing the bill was entered. The plaintiff appealed.

*H. C. Dunbar,* for the plaintiff.

*J. H. Coakley,* (*J. H. Coakley, Jr.,* with him,) for the defendant.

QUA, J. By this bill, as amended, the plaintiff seeks to establish either a trust or an equitable lien against the proceeds of a policy of insurance upon the life of William H. Fielding, deceased. The defendant was Fielding's second wife, whom he married late in life, and is now his widow. At his death the policy stood payable to her as beneficiary, and she has received the amount of it from the insurance company. The evidence is reported.

William H. Fielding in his lifetime was the principal stockholder and the leading spirit in the plaintiff corporation. Although some stock was held outside Fielding's family by one or two persons who do not seem to have taken any active part in the affairs of the corporation, it was essentially a family enterprise. Fielding's two sons and his daughter were employed by the corporation. All were children of his first wife. The policy was originally for $5,000 and was issued in 1926, payable to Fielding's estate. Shortly afterwards the corporation was substituted as beneficiary. Under the terms of the policy Fielding still retained the right to change the beneficiary. There was evidence that Fielding told his children that he was taking out the policy to protect the business in case anything happened to him. Thereafter the corporation paid the premiums on the policy until 1938. It contends that these payments were made under an agreement between it and Fielding whereby it agreed to pay the premiums in consideration of Fielding making it the beneficiary of the policy and continuing it as such until his death, so that it might then receive the proceeds. The corporation alleges that the premiums paid by it amount to more than the face of the policy. At all events they must have aggregated a substantial sum. Fielding's first wife died in 1934. He married the defendant in 1936. The second marriage was not welcomed by the children, who however continued to work with their father for the corporation. In 1938 Fielding substituted the defendant as beneficiary of the policy in place of the corporation, without reserving the

right again to change the beneficiary. He then began paying the premiums himself. It does not appear that the corporation assented to this change, and a finding could have been made that it was willing to continue making the payments. Fielding died in 1940.

It is the contention of the plaintiff that its alleged agreement with Fielding and its payment of the premiums gave it an equitable interest in the policy, and that it is entitled to the proceeds. If such an agreement was made and was faithfully observed by the plaintiff it would acquire an equitable right to the proceeds of the policy which it could enforce against a person subsequently named as beneficiary, unless the latter was a purchaser for value without notice or in some manner acquired an equity superior to that of the plaintiff. *Columbian Circle* v. *Mudra*, 298 Ill. 599. *Jacobson* v. *New York Life Ins. Co.* 199 Iowa, 770. *MacDonald* v. *Conservative Life Ins. Co.* 292 Mich. 182. *Cronan* v. *Metropolitan Life Ins. Co.* 50 R. I. 323. *Travelers Ins. Co.* v. *Gebo*, 106 Vt. 155. *Williamson* v. *Williamson Paint Manuf. Co.* 113 W. Va. 744. *Wellhouse* v. *United Paper Co.* 29 Fed. (2d) 886. Couch on Insurance, § 308. Vance, Insurance, § 147. The same principle finds illustration in *Ryan* v. *Boston Letter Carriers' Mutual Benefit Association*, 222 Mass. 237. As to the nature of the expectant interest of a named beneficiary, see *Tyler* v. *Treasurer & Receiver General*, 226 Mass. 306, 308; *Kruger* v. *John Hancock Mutual Life Ins. Co.* 298 Mass. 124. See also *Kerr* v. *Crane*, 212 Mass. 224. Although by the terms of the policy Fielding had the right as between himself and the insurance company to change the beneficiary, he could contract with the plaintiff not to do so and would then no longer have that right as between himself and the plaintiff. Whether the defendant would be entitled to retain an amount equal to the premiums paid by William H. Fielding after he began paying them in 1938 depends upon facts not fully developed in the present record.

It follows that the main issue of fact in the case as tendered by the pleadings and presented by the evidence was whether the contract asserted by the plaintiff was in truth

made. There was evidence tending to show that such a contract was made. The trial judge, however, although he made elaborate findings of fact, made no finding on this issue. He admitted in evidence over the plaintiff's exception a written agreement between William H. Fielding and his children which was made shortly before Fielding's second marriage and to which neither the plaintiff nor the defendant was a party. This agreement provided for the ultimate disposition of Fielding's stock in the corporation among his children and contained some provisions in behalf of the defendant, but it did not purport to deal with insurance in any way. It does not appear that the terms of the agreement have as yet been carried out. Without analyzing the evidence in detail to discover whether the course of the hearing may have rendered this agreement competent in some aspect of the case, it is clear that upon the evidence in this record it could not become a dominant factor or operate to release or discharge any equity the plaintiff may have acquired in the insurance. But after the introduction of this agreement undue weight seems to have been attached to it. We cannot avoid the impression that the true issue in the case was largely lost sight of. The judge's findings show that his conclusion that the defendant was entitled to hold the proceeds of the policy rested upon his belief that after Fielding had provided for the distribution of his stock among his children he intended that his widow should have the insurance and thought that he had a right to give it to her, and upon the judge's feeling that the allotment of the stock among the children and the gift of the insurance to the wife, taken together, would constitute a reasonable disposition of Fielding's assets between his first wife's children and his second wife. It was the right of the plaintiff to have its claim of a trust upon the policy determined upon the true issues pertinent to that claim without regard to the proposed division of assets in the Fielding family.

There is nothing in the defendant's argument that a contract such as that upon which the plaintiff's case is based would violate the statute of wills. *Legro* v. *Kelley,* 311 Mass. 674, 676–677.

The defendant contends that the provisions of G. L. (Ter. Ed.) c. 175, § 126, save the proceeds of the policy for the benefit of the defendant. After a careful examination of the statutes and the decisions we are of opinion that this contention cannot prevail. Section 126 must be construed in connection with § 125 immediately preceding, since the provisions now included in these two sections originated in the same enactment (St. 1844, c. 82) and have always existed side by side, either in the same section or as separate sections, except during the interval between St. 1887, c. 214, and St. 1894, c. 120. During that time the provisions of what is now § 126, specially mentioning policies payable to married women, were omitted altogether, as was said in *Bailey* v. *Wood*, 202 Mass. 549, 551, "probably for the reason that they were deemed unnecessary." The reason why they might be deemed unnecessary would be because the subject was sufficiently covered by what is now § 125. The two sections read as follows: "Section 125. If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, whether or not the right to change the named beneficiary is reserved by or permitted to such person; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or on behalf of a creditor, of a claim to recover for certain premiums paid in fraud of creditors, with specification of the amount claimed. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary. Any person to whom a policy of life or en-

dowment insurance, issued subsequent to April eleventh, eighteen hundred and ninety-four, is made payable may maintain an action thereon in his own name." "Section 126. Every policy of life or endowment insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, and whether or not the right to change the named beneficiary is reserved by or permitted to the person effecting such insurance, shall enure to her separate use and benefit, and to that of her children, subject to the provisions of the preceding section relative to premiums paid in fraud of creditors and to sections one hundred and forty-four to one hundred and forty-eight, inclusive. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary."

The policy in question falls within the literal description of the policies to which § 126 refers, since the policy can now be said to have been "made payable to a married woman," the defendant, although it was originally payable to Fielding's estate. Undoubtedly the defendant would be protected by § 126 against creditors of her deceased husband, or his trustee in bankruptcy, if he had been adjudged bankrupt, or his administrator as the representative of his creditors or distributees. But it does not follow that the statute was intended to protect a person in the defendant's position against persons who had acquired equitable rights in the policy itself before she acquired any rights in it. The wording of the original statute (St. 1844, c. 82) tends to show that its purpose was to protect the beneficiary, whether a married woman or not, against the creditors of the person "effecting" the policy. This is the purpose disclosed by the searching examination into the origin of this statute contained in *Bailey* v. *Wood*, 202 Mass. 562. The wording of § 125 still confines that section

to this purpose. Changes in the wording of § 126 have left that section in a form that makes a broader construction arguable, but we do not believe that these changes were intended to have that effect. The principal change in form occurred when the section was reënacted in St. 1894, c. 522, § 73. It was said in *Bailey* v. *Wood*, 202 Mass. 549, at page 551, that the statute of 1894 "was a re-enactment without material changes of former statutes." Sections 125 and 126 are fair and reasonable if they afford protection only against the claims of creditors. Both sections contain expressly or by reference the same provisions whereby creditors can reclaim premiums paid in fraud of their rights. Those premiums are the measure of the depletion of the debtor's estate and are therefore all that his creditors have lost. Section 126 would not, we think, be fair and reasonable if it had the effect of depriving a party of an equitable right or title acquired in the policy before the married woman became a beneficiary without making any provision reimbursing such party in any way for the cost of acquiring that interest. A married woman is not in general allowed to take property of her husband free of encumbrances, charges, and trust interests honestly acquired in his lifetime by third parties. Changes in wording should be held to produce such a result only where it is abundantly clear that such a result was intended. In *Schade* v. *Western Union Life Ins. Co.* 125 Wash. 200, a statute similar to ours was held not to shut off equitable claims of a third party upon the policy arising before it became payable to the wife. If some expressions in *Tolman* v. *Crowell*, 288 Mass. 397, would seem to give the statute the effect of barring equitable property rights in the policy in addition to mere creditor claims we think those expressions, if so interpreted, went further than was necessary to decide the case. It is plain that the decision was based in great part upon other grounds. In *Proctor* v. *MacClaskey*, 278 Mass. 238, the wife became beneficiary before the corporation paid any premiums (see page 241), and the corporation paid premiums only as agent of the husband or as a volunteer (see page 242).

The plaintiff's exceptions on questions· of evidence have become immaterial.

For the reasons set forth the cause must be heard anew.

*Decree reversed with costs to the plaintiff.*