273 So.2d 189

**Norma Louise JENKINS**

v.

**Eileen J. LOVELADY et al.**

**SC 95.**

Supreme Court of Alabama.

Feb. 1, 1973.

John E. Lunsford, Birmingham, for appellant.

Matt Scalici, Birmingham, for appellee, Eileen J. Lovelady.

Cabaniss, Johnston, Gardner & Clark and C. Henry Marston, Birmingham, for appellee, Protective Life Ins. Co.

which insured the lives of certain employees of the City of Birmingham, including Jenkins.

The original beneficiary designated on Certificate 103–F was the respondent Eileen J. Lovelady, a sister of the insured Robert L. Jenkins.

On or about June 25, 1959, the beneficiary on Certificate 103–F was changed to respondent Norma Louise Jenkins, who was at that time the wife of the insured Robert L. Jenkins.

Contemporaneously with the filing of its bill, Protective deposited with the Register of the Circuit Court of Jefferson County, in Equity, the sum of $1,000.00, the entire amount due under Certificate 103–F on account of the death of Robert L. Jenkins.

Protective in its bill prayed, among other things, that the trial court require the respondents to propound their claims to the insurance proceeds paid into court by Protective and to litigate between themselves the question of ownership of said proceeds and further prayed that the court determine the person who is legally entitled to those proceeds.

The respondent Norma Louise Jenkins, in her answer averred, in effect, that she was in possession of Certificate 103–F and that there had been no valid beneficiary change on said Certificate since she was designated as the beneficiary. She further averred in her answer that, on to-wit: October 18, 1966, after she was divorced from Robert L. Jenkins, she entered into "a written contract with the said Robert L. Jenkins by the terms whereof she and the said Robert L. Jenkins agreed, for a valuable consideration, that she, as beneficiary in said policy of insurance, would not be changed but that she would remain the beneficiary therein and be entitled to the proceeds thereof in consideration of her promise to pay the premiums thereon as the same became due, which said contract is in writing and a copy thereof is attached hereto and made Exhibit 'A' to this answer

## PER CURIAM.

This is an appeal from a decree rendered in a proceeding which was commenced when Protective Life Insurance Company, a corporation, filed an interpleader action as authorized by Equity Rule 36 against Norma Louise Jenkins and Eileen J. Lovelady.

Protective deemed it wise to institute the proceeding because Mrs. Jenkins and Mrs. Lovelady each claimed to be the beneficiary of a $1,000.00 life insurance certificate which Protective had issued to Robert L. Jenkins on October 25, 1947, when he was an employee of the City of Birmingham which certificate was in force and effect at the time of Jenkin's death on July 15, 1971.

The insurance certificate which bore the identification 103–F was issued under Protective's Group Policy 172–G, as amended,

as though set out herein in detail. And this respondent further avers that pursuant to the terms and provisions of said written contract, she did after the date thereof to-wit October 18, 1966, make payment of all of the premiums coming due on said policy of insurance."

The substance of the answer filed by the respondent Mrs. Eileen J. Lovelady is that she is entitled to the proceeds of Certificate 103–F because of a change in beneficiary made by Robert L. Jenkins on or about July 2, 1971, whereby she was designated as the person to receive the proceeds of said Certificate 103–F upon the death of Jenkins.

The trial court after a hearing wherein the testimony was taken ore tenus decreed, in effect, that after the costs of the proceeding were paid from the interpleaded fund that the Register pay from that fund the sum of $100.00 to counsel for Protective and pay to the respondent, Norma Louise Jenkins, the sum of $285.00. The Register was further directed to pay the balance of the interpleaded fund to the respondent Eileen J. Lovelady.

From that decree the respondent, Mrs. Norma Louise Jenkins, appealed to this Court.

The appellant, Mrs. Jenkins has made three assignments of error, but we will treat only Assignment 3 in that it seems to include the matters about which Mrs. Jenkins complains in her assignments numbers 1 and 2.

Assignment of Error 3 reads: "3. The Court erred in failing to award all of the proceeds of the interpleader (sic) funds, including attorney fees, to appellant."

▮ We think we would be entirely unjustified in construing Assignment 3 as complaining of the court's action in requiring the costs of the proceedings to be paid from the interpleaded funds, so we will give no consideration to that question other than to point out that under the express terms of Equity Rule 36, the trial court in an action of this kind "may tax costs at its discretion."

Robert L. Jenkins to whom we will sometimes hereinafter refer as the insured was a member of the Birmingham Fire Department on October 25, 1947, the day on which Protective issued Certificate 103–F insuring his life in the sum of $1,000.00 in which certificate his sister Eileen J. Lovelady was designated the beneficiary.

Insured retired from his position with the City of Birmingham on January 26, 1958. On May 28, 1958, he married the appellant, Norma Louise Jenkins, to whom we will sometimes hereinafter refer simply as Mrs. Jenkins.

Under the provisions of Certificate 103–F and those of Protective's Group Policy 172–B, as amended, insured reserved the right to change the beneficiary and he exercised this right to the end that Mrs. Jenkins became the beneficiary of Certificate 103–F on June 25, 1959. Certificate 103–F bears an endorsement made by Protective showing that the change of beneficiary was effective as of the date last mentioned.

Insured and Mrs. Jenkins were divorced on August 6, 1966. On October 18, 1966, they signed the following instrument:

"I, Robert L. Jenkins, borrowed $75.00 (seventy-five) (dollars) from Norma Louise Jenkins and told her that I would pay her back when I got my retirement check on November 7th. I also told her that I was going to drop all of my insurance policies and that they would not benefit me in any way. She tried to get me to keep them and then I told her that I didn't have the money to keep on paying for the premiums, we made an agreement that we would leave each other as beneficiary on all of our policies as they now stand and she agreed to pay all of my insurance premiums. She said that she would pay the insurance premiums direct to Liberty National Life that

were due beginning November 1966 and that she would pay me $5.00 (five dollars) a month beginning this month for the premium payments that the City took out of my retirement check for the two group life insurance policies.

I told Louise that I didn't want any of my policies, except my burial insurance policy and that I wanted to (sic) burried at Morris. I also told her that I trusted her and that if I ever did want any of my policies that I would pay her in full (in one lump-sum payment) for all of the premiums that she had paid on any policy (or policies) that I wanted and that then I would get the policy (or policies).

Robert L. Jenkins
(Signed) Robert L. Jenkins
5361 First Ave., North
Birmingham, Ala. 35212

Witness:

Pearl B. Lee
9712 Red Lane Drive
Birmingham, Alabama 35215

Norma Louise Jenkins
(Signed) Norma Louise Jenkins
4915 Sixth Avenue, South
Birmingham, Ala. 35222

Witness:

Rosemary Lehmann
4234 Woodvale Road South
Birmingham, Alabama 35222"

Insured's life was apparently insured by three companies at the time of his death. In effect was a $2,500.00 policy issued by Liberty National Life Insurance Company, the proceeds of which were paid to Mrs. Jenkins the named beneficiary. Protective's Certificate 103–F, the subject of this litigation, was also in effect. The record tends to show that The Prudential Insurance Company of America had insured the lives of certain employees of the City of Birmingham, including insured, under its Group Policy G–4071 and its Certificate 923.

Mrs. Jenkins paid directly to Liberty National Life Insurance Company the premiums on its policy as they became due. The City of Birmingham paid the premiums on the two group policies and deducted from insured's monthly pension check the premiums paid for that month. The amount deducted monthly does not appear except as indicated in the agreement of October 18, 1966, when the parties to that agreement treated the monthly deduction for both group policies or certificates as being $5.-00. There is testimony in the record given by the payroll supervisor for the City of Birmingham to the effect that the amount deducted from insured's monthly pension check because of the payment by the City of the premium due on the Protective policy "xx was somewhat less than $1.00 a month." There is no such testimony in regard to the amount paid Prudential each month or the amount of the coverage afforded by the Prudential insurance.

According to Mrs. Jenkins, she paid insured $5.00 each month to reimburse him for the amount deducted from his monthly pension check. Her testimony was not disputed, and the trial court must have believed her, because it awarded her the sum of $285.00 out of the interpleaded funds which represents the amount she would have paid if she began paying $5.00 in the month of October, 1966, and paid $5.00 each month thereafter through June, 1971. Apparently, no insurance premium was deducted for the month of July, 1971, the month in which insured died.

Insured was admitted to the Veterans Administration Hospital in Birmingham on or about June 8, 1971, on an application signed by Mrs. Jenkins who drove him to the hospital upon being advised of his illness by Mrs. Lovelady.

Exploratory surgery performed on or about June 16, 1971, revealed that insured had cancer of the esophagus. According to Mrs. Lovelady, insured, while in the hospital, expressed an interest in making her the beneficiary of Certificate 103–F which contained the following provision: "The right to change the beneficiary is reserved." But it seems to be admitted by all parties that the contractual provisions which governed the change of beneficiary

were included in Group Policy 172–G as amended. Those provisions read:

"CHANGE OF BENEFICIARY— Any employee may designate a new beneficiary under this contract by filing at the Home Office of the Company a written request on the Company's form provided for this purpose, *accompanied by certificate of insurance for proper endorsement.* Such change shall become effective upon receipt of said request at the Home Office of the Company." (Emphasis supplied)

Mrs. Lovelady contacted an attorney relative to the change of beneficiary. The attorney talked with officials or employees of the City of Birmingham relative to that change, but no attempt was made to show what was said in that conversation.

However, Mrs. Lovelady, thereafter, obtained a form which insured could use in submitting to Protective his request for a change of beneficiary on Certificate 103–F. Mrs. Lovelady carried the form to insured while he was in the hospital. On June 24, 1971, insured signed the form wherein he requested that Mrs. Lovelady be made the beneficiary of Protective's "Group Policy No. 103–F," obviously an intended reference to Certificate 103–F. Insured's signature was witnessed by one H. R. Bowers. The form which insured signed contained the following provision:

"The certificate must accompany this form as the requested change will not take effect until endorsed thereon."

The certificate was not sent to Protective along with the form wherein a request for change of beneficiary was made. The certificate was in the possession of Mrs. Jenkins, and no request was made of her to deliver the certificate to the insured or to Protective. According to Mrs. Jenkins, the insured knew that the certificate was in her possession.

In lieu of sending the certificate to Protective along with the form, those who were handling the matter sent an affidavit to the effect that the certificate had been lost. The form and the affidavit reached Protective on or about July 2, 1971. On or about July 13, 1971, Protective advised the City of Birmingham that it could not effectuate the change of beneficiary in that the certificate had not been surrendered to it nor had the named beneficiary therein signed an indemnity agreement, a practice required by Protective when a certificate was not surrendered along with the request for change of beneficiary. At the time of insured's death two days later, Mrs. Jenkins remained the named beneficiary on Certificate 103–F and on the records of Protective.

There was evidence adduced on behalf of Mrs. Lovelady to the effect that on several occasions prior to his confinement in the hospital, the insured expressed an intention to name Mrs. Lovelady as the beneficiary on Certificate 103–F. It was stated that he expressed such intention on July 24, 1971, the day on which he signed the request for change of beneficiary at which time according to the witness he was alert and mentally competent. Mrs. Lovelady stated that she did not request that she be named as the beneficiary on said certificate. One witness who testified on behalf of Mrs. Lovelady said that insured had expressed the hope or desire that Mrs. Jenkins remain away from the hospital and Mrs. Lovelady testified that insured told her: " * * * he did not love her [Mrs. Jenkins] that he never had, and he had never told her he loved her."

On the other hand, the evidence shows without doubt that subsequent to the divorce and prior to the time the insured entered the hospital, he and Mrs. Jenkins were on friendly terms. His pension check continued to go to her place of residence until shortly before his death when according to Mrs. Lovelady, one such check came to her residence in accordance with her instruction. Insured worked a garden for Mrs. Jenkins. He mowed her lawn and

did other work around her home for all of which he was paid by Mrs. Jenkins. It was Mrs. Jenkins who paid his fine and secured his release from jail on occasions. Insured was an alcoholic.

The doctors in charge of insured while he was in the Veterans Administration Hospital advised members of his family that in view of the terminal nature of his illness, he could do as well out of the hospital as in it. On July 1, 1971, Mrs. Jenkins and a brother of insured took him to his apartment. It was Mrs. Jenkins who dressed him before he left the hospital. In the late afternoon of that day or that night, he was driven by members of his family, including Mrs. Lovelady to her home in Morris where he remained until July 14, 1971, when he was returned to the Veterans Administration Hospital where he died the next day. Mrs. Jenkins was with insured in his apartment at the time members of his family removed him to Morris.

Appellee argues in support of the trial court's decree that the facts detailed above show that appellee, Mrs. Lovelady, was in fact the beneficiary of Certificate 103–F at the time of insured's death despite the fact that Protective had not endorsed the change on the said certificate nor had it otherwise recognized her as the beneficiary on its records. Appellee cites our case of Flowers v. Flowers, 284 Ala. 230, 224 So. 2d 590, where it is said, in part, as follows:

"The provisions in the certificate of insurance relative to the manner in which a change of beneficiary could be effectuated were for the protection of the insurer. They could be waived by the insurer and were waived when it declined to take sides between the claimants, assumed the position of a stakeholder, paid the proceeds of the certificate of insurance to the Register of the Circuit Court in compliance with the order of the trial court, and was thereupon discharged. Phillips v. Phillips, 240 Ala. 148, 198 So. 132. See Norton v. Norton, 280 Ala. 307, 193 So.2d 750, and cases cited.

But the mere fact that the insurer did not take sides between the claimants does not show that there had been a change of beneficiary."

The threshold question is the effect of the agreement of October 18, 1966.

■ A mere beneficiary in a policy of old line or ordinary life insurance which contains a provision for a change of beneficiary by the insured, has only an expectancy but no vested right until loss occurs. West End Sav. Bank v. Goodwin, 223 Ala. 185, 135 So. 161; Flowers v. Flowers, supra; Stephenson v. Westbrook, 286 Ala. 620, 244 So.2d 569; Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 140 So. 752; Appleman, Insurance Law and Practice, § 921.

■ But that rule has no application where the beneficiary has acquired a vested interest by virtue of a contract with insured. McDonald v. McDonald, 215 Ala. 179, 110 So. 291; West End Sav. Bank v. Goodwin, supra. See Summers v. Summers, 218 Ala. 420, 118 So. 912; Williams v. Williams, 276 Ala. 43, 158 So.2d 901; 46 C.J.S. Insurance § 1173(2), p. 64, Note 20.

■ While the precise question is res nova, in this jurisdiction, it has been held by a number of courts in other states that where the person designated as beneficiary pays the premiums pursuant to an agreement that he shall remain the beneficiary or receive the proceeds of the policy, such person acquires a vested right in the policy regardless of whether the insured retains the right, under the terms of the policy, to change the beneficiary. 46 C.J.S. Insurance § 1173(2), pp. 66, 67, Note 40; Appleman, Insurance Law and Practice, § 922; Leal v. Leal, (Tex.Civ.App.) 401 S. W.2d 293; and cases cited: Katzman v. Aetna Life Ins. Co., 309 N.Y. 197, 128 N. E.2d 307; Matthews v. Matthews, 163 Kan. 755, 186 P.2d 233; Wurzburg v. New

York Life Ins. Co., 140 Tenn. 59, 203 S.W. 332; McMullen v. St. Lucie County Bank, 128 Fla. 745, 175 So. 721; Massachusetts Linotyping Corp. v. Fielding, 312 Mass. 147, 43 N.E.2d 521; Cronan v. Metropolitan Life Ins., 50 R.I. 323, 147 A. 618; In re: Szymanski's Estate, 109 Pa.Super. 555, 167 A. 420; Jacobson v. New York Life Ins. Co., 199 Iowa 770, 202 N.W. 578; Reilly v. Henry, 187 Ark. 420, 60 S.W.2d 1023.

As we have heretofore pointed out, the trial court accepted as true Mrs. Jenkins undisputed testimony to the effect that she reimbursed the insured for all moneys deducted from his monthly pension checks and used to pay the life insurance premiums. The evidence shows without dispute that Mrs. Jenkins had a group life insurance policy wherein the insured, along with others, was named as a beneficiary. The amount he would have received had Mrs. Jenkins predeceased him was considerably less than that which she would receive under the policies on the life of the insured on which she paid premiums. The amount insured would have received had Mrs. Jenkins predeceased him was $500.00, but that fact does not operate to vitiate the contract of October 18, 1966.

Appellee, Mrs. Lovelady contends that the contract of October 18, 1966, was invalid because at that time Mrs. Jenkins had no insurable interest in the life of the insured from whom she had been divorced.

■ It takes no citation of authority to support the proposition that a husband has an insurable interest in the life of his wife and that a wife has an insurable interest in the life of her husband.

■ The divorce did not change that interest. In Flowers v. Flowers, supra, after citing Couch on Insurance 2d Edition, Vol. 4, Sec. 27: 111, pp. 647, 648, this court held, in effect, that a divorce decree, in and of itself, did not affect the wife-beneficiary's right to receive proceeds of a group life policy, which did not provide

that rights of the beneficiary were conditioned upon continuance of the marriage relation. No such provision is contained in the policy and certificate here under consideration.

A case very much in point is that of Marquet v. Insurance Co., 128 Tenn. 213, 159 S.W. 733. In that case, a policy of insurance was taken out on the life of a husband for his wife's benefit. Prior to the husband's death, the wife obtained a divorce. She continued, however, to pay premiums on the policy until the death of her husband. Payment was resisted by the company on the theory that she had no insurable interest after the divorce. The Tennessee court held that the wife's interest in the life of her husband was to be tested as of the date of the original contract, when her interest in his life was that of a wife, and clearly insurable. The Tennessee court held, as this Court has held, that the divorce did not invalidate a preexisting valid contract of insurance.

In McMullen v. St. Lucie County Bank, supra, it was held that if an insurable interest existed at the time the insurance was secured, the fact that such interest is later cut off or for other reasons ceases to exist is of no consequence. The beneficiary who continued to pay the premiums was entitled to enforce collection of the proceeds of the policy.

Insured never made demand upon Mrs. Jenkins for the Protective policy, and he made no offer to reimburse her in one lump-sum payment or otherwise for the premiums which she had paid on that policy. So the obligation of the October 18, 1966, agreement was in force and effect at the time of the insured's death.

■ We are clear to the conclusion that in view of the contract of October 18, 1966, the insured was without any right to exercise the power of change of beneficiary contained in Certificate 103–F and Policy No. 172–G, supra, and that said contract rendered ineffectual any attempt of

the insured to divest the appellant, Mrs. Jenkins, of her interest therein.

 As heretofore shown the trial court ordered the Register to pay out of the interpleaded funds the sum of $100.00 to counsel for Protective. We are inclined to the view that this was an inadvertence. The record shows the following colloquy between the court and counsel for Protective:

"THE COURT: \* \* \* is it stipulated, Gentlemen, that—and I am addressing my remarks to the counsel for the insurance company inter-pleader that no attorney's fee will be claimed in this action for their services as inter-pleading the funds, is that correct?

MR. MORSTON: Yes, sir."

Mr. Morston was counsel for Protective and in fact apparently prepared the brief filed here on behalf of Protective wherein no effort is made to challenge Mrs. Jenkins' assertion that the trial court erred in awarding an attorney's fee to Protective in view of the waiver as heretofore indicated.

It is the opinion of this Court after a careful review of the record and the briefs filed by the respective parties that Mrs. Jenkins is entitled to receive all of the interpleaded funds other than the amount needed to pay the costs incurred in the trial court.

It follows that the decree of the trial court is reversed and the cause remanded for the rendition of a decree in keeping with this opinion.

The foregoing opinion was prepared by Thomas S. Lawson, Supernumerary Associate Justice, and adopted by the Court as its opinion.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.